[Civ. No. 3429. Third Appellate District.—February 25, 1928.]

THOMAS R. HANNA et al., Appellants, v. RODEO-VALLEJO FERRY CO. (a Corporation) et al., Respondents.

Courtney L. Moore for Appellants.

J. E. Rodgers and A. F. Bray for Respondents.

FINCH, P. J.—In the year 1916 the plaintiffs subdivided a tract of land owned by them and filed a map thereof on which the tract was designated as "Bay Addition to the Town of Crockett." May 20, 1917, they conveyed lot 5, block 3, of the tract to Rudolph Normandsen. The deed of conveyance contained the following provisions:

"That prior to the first day of July, 1936, no building or structure shall be erected or constructed upon said real property or any part thereof which shall be used for, or designated for or intended to be used for any other purpose except that of a dwelling house or a private garage for the owner or occupant of said dwelling house, together with the usual outhouses erected as appurtenant and solely appurtenant to said residence building. . . . If any one or more of the foregoing conditions be violated or broken in whole or in part by the said party of the second part, their heirs, or executors, administrators or assigns, then and in that event all the right, title, estate, claim and interest of the said party of the second part, his heirs, executors, administrators or assigns, in and to the above described real property or any part thereof, arising under this conveyance, shall forthwith cease and terminate and said premises and the whole thereof shall at once revert to and vest in the said parties of the first part, their heirs, executors, administrators or assigns forever."

October 14, 1920, Normandsen conveyed the lot in question to Hans A. and Alice Miller, who conveyed the same to defendant Rodeo-Vallejo Ferry Company October 20, 1923. At the time of the latter conveyance there was no building or structure upon the lot except a dwelling-house. Shortly thereafter the Rodeo-Vallejo Ferry Company and the defendant American Toll-Bridge Company commenced the construction on lot 5 of "a terminal of a bridge to span or cross the Carquinez Straits, and . . . the erection of large concrete pillars and abutments . . . to support said bridge and said terminal." The concrete abutment was completed in July, 1924. It was about twenty-five feet high and forty feet long, "in the form of an ordinary bridge abutment, narrow at the top and sloping down as a retaining wall," and was designed to "carry the end of the steel viaduct that forms the end bearing for the end girders of the viaduct approach to the main bridge." January 28, 1925, the Rodeo-Vallejo Ferry Company conveyed lot 5 to the American Toll-Bridge Company.

Prior to July 15, 1918, the plaintiffs had conveyed to various persons other than Normandsen six lots in block 3 of the Bay Addition and one in block 2, and they thereafter conveyed one lot in block 2 and one in block 3. These con-

veyances all contained restrictive provisions similar to those in the Normandsen deeds. July 15, 1918, the plaintiffs conveyed to the Crockett Land & Cattle Company, a corporation, of which Thomas R. Hanna was president and Wanda Hanna secretary, six lots in block 1, eight in block 2, and five in block 3, without any restrictions. August 20, 1920, they conveyed to the same company two additional lots in block 1, without restriction. Thereafter, and prior to October 20, 1923, the Crockett Land & Cattle Company conveyed to various persons, without any restrictive conditions or covenants, five lots in block 1 and four in block 2. During the same period of time that corporation conveyed to various other persons two lots in block 1, one in block 2, and four in block 3, the conveyances of which contained restrictive clauses similar to those in the Normandsen deed.

The complaint alleges that the restrictive conditions mentioned were inserted in the deeds referred to, ''and in particular the deed'' to Normandsen, ''pursuant to a general scheme or plan of building up said locality, and for the benefit of the lots located in said locality, and for the benefit of persons who purchased lots therein, and as an inducement for persons to purchase the same; . . . that shortly after the defendant the Rodeo-Vallejo Ferry Company acquired title to said lot, the said Rodeo-Vallejo Ferry Company commenced the erection and construction, or permitted the American Toll-Bridge Company to commence the erection and construction on said lot No. 5, without the consent of these plaintiffs of a terminal of a bridge to span or cross the Carquinez Straits, and . . . did erect and . . . complete the erection of large concrete pillars and abutments on said lot No. 5 to support said bridge and said terminal . . . that plaintiff notified the said Rodeo-Vallejo Ferry Company and said American Toll-Bridge Company . . . that said concrete pillars and abutments . . . must be removed from said lot,'' and that said defendants refused to remove them; and ''that thereafter on or about the 3rd day of February, 1925, plaintiffs demanded . . . a reconveyance of said lot No. 5,'' but the defendants refused to make such reconveyance. The prayer is for a decree ''compelling said defendant the American Toll-Bridge Company . . . to convey said lot No. 5 to the plaintiffs.''

The court found the foregoing allegations of the complaint to be true and further found, in accordance with the allegations of the answer:

"That subsequent to the 20th day of October, 1920, the said plaintiffs have not been and are not now, nor are either of them the owners, or owner, of any lot, piece, or parcel of land in the vicinity of the above described property or located in any part of the said Bay Addition to the town of Crockett; . . . that said plaintiffs did not pursue said general scheme and plan of building up said locality in this, that said plaintiffs executed deeds to purchasers in said tract without any restrictions or conditions therein and permitted their successors in interest, to-wit: Crockett Land & Cattle Company to convey portions of said Bay Addition to the town of Crockett without any conditions or restrictions; that on or about the 5th day of February, 1923, the board of supervisors of the county of Contra Costa . . . granted to defendant Rodeo-Vallejo Ferry Company, a corporation, a franchise for the construction and maintenance of a toll bridge, together with the right to take tolls, across Carquinez Straits. . . . at a point approximately opposite to lot 5; . . . that thereafter and prior to the commencement of the above entitled action said Rodeo-Vallejo Ferry Company, a corporation, transferred and assigned the said toll bridge franchise to said defendant American Toll-Bridge Company, a corporation, which said corporation is now the owner and holder thereof; that said defendants, . . . at all of the times in the said complaint mentioned, were and are corporations organized for the purpose among other things of constructing and operating said toll bridge across Carquinez Straits, and had at all times in said complaint mentioned and now have the right of eminent domain; . . . that the use for which said lot was purchased was at all times herein mentioned and now is a public use, and that the purchase of said property by said Rodeo-Vallejo Ferry Company . . . was solely for a public use, to-wit: the construction thereon of a portion of the approach to said toll bridge; . . . and that the use for which said land was obtained by said defendant American Toll-Bridge Company . . . was and is a public use, to wit: the construction thereon of a portion of the approach to said toll bridge: . . . that on or about the 20th day of October, 1923, said defendant Rodeo-Vallejo

Ferry Company constructed on said real property . . . certain piers and abutments; . . . that the construction thereof and the use of said land for said public use as aforesaid was at all times subsequent to the 20th day of October, 1923, known to said plaintiffs and each of them; that the purchases of said lands by said defendants . . . were and are the exercise by said corporations of their right of eminent domain.''

Judgment was entered in favor of defendants and the plaintiffs have appealed.

■ As alleged by the plaintiffs and found by the court, the restrictive conditions in question were inserted in the Normandsen deed ''pursuant to a general scheme or plan of building up said locality, and for the benefit of the lots located in said locality, and for the benefit of persons who purchased lots therein.'' This general scheme, of course, contemplated the insertion by the plaintiffs of similar restrictive conditions in all their subsequent conveyances of lots in the tract for the benefit of the successive owners of lot 5 as well as the purchasers of other lots. The plaintiffs themselves prevented the consummation of the ''general scheme'' by selling numerous lots without the insertion of such restrictive provisions in the deeds of conveyance thereof and they thereby waived the restrictions contained in the Normandsen deed. (*Brown* v. *Wrightman*, 5 Cal. App. 391 [90 Pac. 467]; *Los Angeles etc. Land Co.* v. *Marr*, 187 Cal. 126, 133 [200 Pac. 1051]; 18 C. J. 377; *City of Barnesville* v. *Stafford*, 161 Ga. 588 [43 A. L. R. 1050, 131 S. E. 487]; *Brown* v. *Huber*, 80 Ohio St. 183 [28 L. R. A. (N. S.) 709, 88 N. E. 322].)

■ The complaint, verified by plaintiff Thomas R. Hanna, alleges positively that the construction of the ''large concrete pillars and abutments on said lot 5'' was commenced ''shortly after the defendant Rodeo-Vallejo Ferry Company acquired title to said lot.'' He could not truthfully have verified the complaint containing that allegation unless he knew from the beginning when such work was commenced. Plaintiff Wanda Hanna, as secretary of the Crockett Land & Cattle Company, executed the deeds of that company referred to herein. A number of such deeds recite that the Crockett Land & Cattle Company has ''its principal place of business in Crockett.'' It is a fair inference that any resi-

dent of the small town of Crockett was not without knowledge of the construction of a structure of the magnitude of the Carquinez bridge. The court was warranted in finding that the work of construction thereof ''was at all times subsequent to the 20th day of October, 1923, known to said plaintiffs and each of them.'' The complaint herein was filed February 25, 1925. After the apparent abandonment by the plaintiffs of their restrictive scheme, their delay for more than a year to assert their alleged right, knowing that the defendants, on the faith of the title acquired by them, were making valuable improvements on the lot, constituted a waiver of plaintiffs' alleged right to declare a forfeiture. (18 C. J. 378.) ■ The defendants did not plead a technical estoppel, but ''the doctrine of waiver is somewhat different from that of estoppel, and in order to be invoked need not partake of a technical estoppel.'' (*Knarston* v. *Manhattan Life Ins. Co.*, 140 Cal. 57, 67 [73 Pac. 740].) The plaintiffs first and frequently violated the restrictive agreement in question ■ A court of equity will not enforce a forfeiture in favor of a party to an agreement who has himself violated its terms in the same manner as the party of whom he complains.

■ The defendants were engaged in a public use and, therefore, as found by the court, they were vested with the power of eminent domain. Of course, no restrictive covenant or condition is a bar to the acquisition of property for a public use by a proceeding in eminent domain. (20 C. J. 588.) The defendants had acquired title to the lot in question, subject to any subsisting restriction, prior to the time they actually applied it to a public use. Some authorities hold that when property subject to a restrictive condition is taken for or applied to a public use inconsistent with the restriction, the owner of property for whose benefit the restriction is imposed is entitled to compensation. (Lewis on Eminent Domain, 3d ed., sec. 224; 20 C. J. 654.) In this case, however, even if the restriction were still subsisting, the plaintiffs could not recover damages, because they neither alleged nor proved any damage.

■ Appellants contend that the court erred in sustaining respondents' objection to their offer to prove that ''the Crockett Land & Cattle Company was a corporation organized, controlled and owned solely by the Hannas, and, in

fact was their *alter ego.*" If that proof were made it would in no manner change the result. If the conveyance from the plaintiffs to the corporation be ignored and the conveyances of the corporation to various purchasers of lots be treated as the deeds of the plaintiffs, their failure to insert any restrictive clause in so many of such deeds constitutes a clear waiver of the restrictive conditions in the Normandsen and other deeds. The other points made by the appellants are not deemed of sufficient importance to require discussion.

The judgment is affirmed.

Hughes, J., *pro tem.*, and Plummer, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 23, 1928.

All the Justices concurred.