[Civ. No. 9893. Fourth Dist., Div. Two. Mar. 5, 1970.]

SAMUEL MIRO et al., Petitioners, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent; CITY OF RIALTO, Real Party in Interest.

COUNSEL

Redwine & Sherrill and Justin M. McCarthy for Petitioners.

No appearance for Respondent.

Roger A. Saevig and Ward O. Mathews for Real Party in Interest.

OPINION

TAMURA, J.—This is an original proceeding. Petitioners (the Miros) seek a writ of mandate to set aside an order of immediate possession issued by respondent court in an eminent domain action instituted by the City of Rialto, real party in interest herein, to condemn property for airport purposes.

The controlling issue is whether the right of immediate possession authorized by section 14, article I, of the California Constitution and section 1243.4 of the Code of Civil Procedure extends to property sought to be condemned for airport purposes. We have concluded that it does not and that the order of immediate possession must therefore be set aside.

The relevant facts are uncontradicted. They may be summarized as follows:

The Miros formerly owned an 80-acre parcel which abutted Linden Avenue in the City of Rialto. The street ran north and south along the easterly edge of the parcel. In April 1966 the Miros granted the city an option to purchase 58 acres for municipal airport purposes; the option left the Miros approximately 22 acres located at the southeast corner of the 80-acre parcel. The option contained the following paragraph:

"At all times both present and in the future, Linden Avenue will be made accessible to that portion of REAL PROPERTY retained by OPTIONORS and shall run adjacent to the EAST side of said REAL PROPERTY notwithstanding any subsequent changes for rerouting of Linden Avenue by OPTIONEES, and said Linden Avenue will be maintained by OPTIONEE with no cost to OPTIONORS. It is the desire of OPTIONORS that OPTIONEE assert all reasonable efforts to have the present course of Linden Avenue remain so that it will be a through street running in a Northerly-Southerly direction. In the event a runway to the AIRPORT is constructed so that it crosses Linden Avenue, an underpass will be constructed allowing Linden Avenue to continue being a through street."

In June 1966 the city exercised the option through a "straw man." The escrow instructions and the deed to the city did not contain the quoted provisions of the option agreement.

In November 1968 the city council, pursuant to applicable provisions of the Streets and Highways Code, adopted a resolution vacating that portion of Linden Avenue which abutted the municipal airport. Thereupon the Miros sued the city to reform the deed to the 58 acres to include the terms of the option agreement relating to Linden Avenue and to enjoin its closure. The Miros prevailed. In March 1969 judgment was entered which decreed that the city "does not have the right to close Linden Avenue or to construct a runway across said street without constructing an underpass so as to allow Linden Avenue to remain a through street," ordered reformation of the deed, and enjoined the city from closing Linden Avenue without constructing an underpass. The city's appeal from the judgment is pending.

In June 1969 the city commenced eminent domain proceedings to condemn for the "construction and maintenance of an airport right-of-way and airport" a strip of land constituting the segment of Linden Avenue abutting the airport. The complaint alleged city ownership of the fee by virtue of the resolution vacating the street and described the Miros' interest as "right of access in, over and across said parcel to the next intersecting street" to the north. Upon the filing of the action, the city obtained an order of immediate possession.

In their answer, in addition to ascribing a value to the part taken and claiming severance damages to the 22 acres retained by them, the Miros set up an affirmative defense in which they alleged, in essence, that the minent domain action constituted an attempt by the city to circumvent the decree enjoining it from closing Linden Avenue and charged that the proposed take was therefore not for a "public use." Coincident with the filing of their answer, the Miros moved to quash the order of immediate possession. Denial of the motion led to the filing of the present petition for a writ of mandate.[1]

The question whether respondent court was empowered to issue the order of immediate possession is properly before us. ■ Jurisdiction to issue an order of immediate possession in an eminent domain action may be reviewed by an appellate court in an original proceeding. (*Weiler* v. *Superior Court,* 188 Cal. 729 [207 P. 247]; *O. T. Johnson Corp.* v. *Superior Court,* 103 Cal.App.2d 278 [229 P.2d 849]; see *Harden* v. *Superior Court,* 44 Cal.2d 630, 637 [284 P.2d 9]; *San Bernardino County Flood*

---

[1]Meanwhile, the city has filed another eminent domain action to condemn the remaining 22 acres owned by the Miros.

*etc. Dist.* v. *Superior Court,* 269 Cal.App.2d 514 [75 Cal.Rptr. 24]; *State of California* ex rel. *Dept. of Water Resources* v. *Natomas Co.,* 239 Cal. App.2d 547, 558 [49 Cal.Rptr. 64].)

■ The power of a superior court to issue an order of immediate possession upon commencement of an eminent domain action is derived from section 14, article I, of the California Constitution (hereafter § 14), as implemented by sections 1243.4 to 1243.7 of the Code of Civil Procedure.[2] Section 14 reads in pertinent part: "Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner . . . ; provided, that in any proceeding in eminent domain brought by . . . a municipal corporation . . ., the aforesaid . . . may take immediate possession and use of any right of way . . . , required for a public use whether the fee thereof or an easement therefor be sought upon first commencing eminent domain proceedings according to law in a court of competent jurisdiction and thereupon giving such security in the way of money deposited as the court in which such proceedings are pending may direct, and in such amounts as the court may determine to be reasonably adequate to secure to the owner of the property sought to be taken immediate payment of just compensation for such taking and any damages incident thereto, . . . as soon as the same can be ascertained according to law. . . ."

Section 1243.4 of the Code of Civil Procedure restates the enabling provisions of section 14 in substantially the same language. It provides that entities named in section 14 "may take immediate possession and use of any right of way, . . . required for a public use whether the fee thereof or an easement therefor be sought, in the manner and subject to the conditions prescribed by law." The procedure for fixing the amount of security, for obtaining and serving an order of immediate possession and for withdrawal of security deposits are prescribed by sections 1243.5 to 1243.7.

The Miros concede, as they must, that their interest in the segment of Linden Avenue in question may be taken by the city for municipal airport purposes upon payment of just compensation. ■ A municipality is empowered to acquire property by eminent domain for airport purposes. (Gov. Code, § 50470; Code Civ. Proc., § 1238, subd. 20.) Without attempting to define the precise nature or extent of their interest in subject property, the undisputed facts indicate that the Miros' alleged interest stems from either (1) rights reserved under the option agreement and the court

---

[2]Prior to 1957 there were no implementing statutes; the immediate possession provisions of section 14 were deemed to be self-executing. (See *Young* v. *Superior Court,* 216 Cal. 512 [15 P.2d 163]; *Fletcher* v. *District Court of Appeal,* 191 Cal. 711, 713-714 [218 P. 391].)

decree,[3] or (2) a private easement of access in, over, and across the strip by virtue of their retention of the 22 acres abutting Linden Avenue (*Bacich* v. *Board of Control,* 23 Cal.2d 343, 349 [144 P.2d 818]; *Lane* v. *San Diego Elec. Ry. Co.,* 208 Cal. 29, 33 [280 P. 109]; *Norcross* v. *Adams,* 263 Cal.App.2d 362, 366 [69 Cal.Rptr. 429]), or both. ■ A reservation of rights in lands granted or dedicated to a government agency may not be substantially impaired or destroyed by the government without payment of just compensation. (*Pedro* v. *County of Humboldt,* 217 Cal. 493, 497 [19 P.2d 776]; *People* ex rel. *Dept. of Public Works* v. *DiTomaso,* 248 Cal.App.2d 741, 755-756 [57 Cal.Rptr. 293]; *Wofford Heights Associates* v. *County of Kern,* 219 Cal.App.2d 34, 42 [32 Cal.Rptr. 870]; *Hill* v. *City of Oxnard,* 46 Cal.App. 624 [189 P. 825]). But such rights may be taken for public use upon payment of just compensation. (See *People* ex rel. *Dept. Public Works* v. *DiTomaso, supra,* pp. 755-756; *People* v. *City of Los Angeles,* 179 Cal.App.2d 558, 574 [4 Cal.Rptr. 531]; *Hanna* v. *Rodeo-Vallejo Ferry Co.,* 89 Cal.App. 462, 468 [265 P. 287].) ■ Similarly, while the right of an abutting owner of access in a public street on which his property abuts may not be substantially impaired or destroyed without payment of just compensation (*Breidert* v. *Southern Pac. Co.,* 61 Cal.2d 659, 664 [39 Cal.Rptr. 903, 394 P.2d 719]; *Valenta* v. *County of Los Angeles,* 61 Cal.2d 669, 672 [39 Cal.Rptr. 909, 394 P.2d 725]; *Phillips* v. *City of Pasadena,* 27 Cal.2d 104, 106-107 [162 P.2d 625]; *Constantine* v. *City of Sunnyvale,* 91 Cal.App.2d 278, 284 [204 P.2d 922]), such rights may, by necessary implication, be taken for a public use by eminent domain (*People* v. *Ricciardi,* 23 Cal.2d 390, 400 [144 P.2d 799]).

■ While conceding that the city has the power to condemn their interest for a public use, the Miros contend that the instant action is merely an attempt to circumvent the judgment in the prior action and that, consequently, the proposed take is not for a "public use" and immediate possession is unauthorized. The contention is without merit. While public use is a justiciable issue in an eminent domain action (*People* v. *Chevalier,* 52 Cal. 2d 299, 304 [340 P.2d 598]), in the instant case it is conceded that the property is being taken for the construction and maintenance of a municipal airport, a valid public use. ■ In order to raise the issue of "public use," a condemnee must show that the condemnor is guilty of "fraud, bad faith, or abuse of discretion in the sense that the condemnor does not actually intend to use the property as it resolved to use it." (*People* v. *Chevalier, supra,* p. 304; *People* ex rel. *Dept. of Public Works* v. *Superior Court,* 68 Cal.2d 206, 215 [65 Cal.Rptr. 342, 436 P.2d 342]; *County of*

---

[3]As heretofore noted, by virtue of the pending appeal therefrom, the decree is not final.

*Los Angeles* v. *Law Bldg. Corp.,* 254 Cal.App.2d 848, 854 [62 Cal.Rptr. 542].) ■ The Miros neither allege nor contend that the city does not actually intend to use subject property for the resolved purpose. Their attack goes to the issue of necessity. However, the city council's determination as to necessity is conclusive and nonjusticiable. (Ccde Civ. Proc., § 1241, subd. 2; Code Civ. Proc., § 1239, subd. 4; *People* v. *Chevalier, supra,* 52 Cal.2d 299, 307.)

■ The Miros also contend that the order of immediate possession is invalid because their interest is not a "right of way" within the meaning of section 14 and section 1243.4 of the Code of Civil Procedure. The contention is devoid of merit. Apart from the fact that Miros' interest in the subject property may in fact constitute a "right of way," their contention is premised on the erroneous assumption that the right to immediate possession hinges on the nature of the condemnee's property interest and may be exercised only when that interest is a "right of way." No authorities are cited for the proposition and we find none. ■ The right to immediate possession is governed, not by the nature of the condemnee's interest, but by the public use for which the property is being condemned. ■ The phrase "may take immediate possession and use of any right of way . . ." obviously means to take *for* a "right of way." The construction urged by the Miros would lead to absurd results; it would, for example, preclude immediate possession for highway use where a fee is sought notwithstanding the express provision of section 14 authorizing immediate possession whether a fee or an easement be sought.

The dispositive issue is whether a taking of property for airport purposes constitutes a taking for a "right of way" within the meaning of section 14, article I, of the California Constitution, and section 1243.4 of the Code of Civil Procedure. Although the issue was squarely decided by the District Court of Appeal in *Almada* v. *Superior Court* *(Cal.App.) 149 P.2d 61,[4] the Supreme Court granted a hearing. Before decision by the Supreme Court, the appeal was dismissed upon stipulation of the parties. Transfer of the cause to the Supreme Court rendered the opinion of the District Court of Appeal a nullity and of no effect as a precedent. (*Ponce* v. *Marr,* 47 Cal.2d 159, 161 [301 P.2d 837]; *McDonough* v. *Goodcell,* 13 Cal.2d 741, 745 [91 P.2d 1035, 123 A.L.R. 1205]; *Knouse* v. *Nimocks,* 8 Cal.2d 482, 484 [66 P.2d 438]; *In re Los Angeles County Pioneer Soc.,* 141 Cal.App.2d 563, 567 [297 P.2d 72].) The question must thus be treated as one of first impression; we must consider it de novo.

*A hearing was granted by the Supreme Court. (Dismissed.)

[4]The Court of Appeal held that a taking for airport purposes is not a taking for a "right of way."

We find no decision, other than the vacated opinion in *Almada,* in which the scope of the term "right of way" as used in section 14 has been con- The common law concept of a right of way has been traditionally defined as the privilege of passing over another's land in some particular line. (See *Kripp* v. *Curtis,* 71 Cal. 62, 63 [11 P. 879]; *Postal Tel. Cable Co.* v. *Southern Ry. Co.,* 90 F. 30, 32.) However, the term has frequently been interpreted to mean not only the right of passage over another's land but the strip of land itself without regard to the quality of the estate or interest. (*Ocean Shore R.R. Co.* v. *Doelger,* 127 Cal.App.2d 392, 399 [274 P.2d 23]; *Moakley* v. *Los Angeles Pac. Ry. Co.,* 139 Cal. App. 421, 424 [34 P.2d 218]; *Anderson* v. *Willson,* 48 Cal.App. 289, 295 [191 P. 1016].) When so used, the term "right of way" is merely descriptive of the purpose for which the strip of land is to be used. (See *McCotter* v. *Barnes,* 247 N.C. 480 [101 S.E.2d 330, 334-335].) In the instant case the problem is to determine what uses and purposes are encompassed within the words "right of way." The Legislature has not undertaken to define its scope nor to enumerate uses which fall within it; section 1243.4 of the Code of Civil Procedure merely repeats the constitutional language.[6]

 In construing the imprecise term "right of way," we must take cognizance of the purpose sought to be accomplished by the constitutional provision. (*State Board of Education* v. *Levit,* 52 Cal.2d 441, 463 [343 P.2d 8]; *City & County of San Francisco* v. *County of San Mateo,* 17 Cal.2d 814, 818 [112 P.2d 595].) Arguments to the voters as set forth in the official pamphlets accompanying sample ballots, although not controlling, may be considered as evidence of the purpose for which a constitutional amendment was voted. (*Cypress Lawn Cemetery Assn.* v. *City & County of San Francisco,* 211 Cal. 387 [295 P. 813]; *State of California* ex rel. *Dept. of Water Resources* v. *Superior Court,* 208 Cal.App.2d 659, 664 [25 Cal.Rptr. 363].) The provision authorizing immediate possession when property is sought for a "right of way" was added to section 14 by amendment approved by the voters in 1918. The arguments to the voters in support of the amendment stated in part: "Experience has shown that cities, in acquiring *long stretches of rights of way* for public purposes, are often held up by unreasonable and arbitrary owners who attempt to take advantage of a rule which requires that the city can not go into possession

---

[5]Condemning of property for a water well site and right to take water from the land has been held not to be a taking for a purpose for which immediate possession is authorized. (*O.T. Johnson Corp.* v. *Superior Court,* 103 Cal.App.2d 278, 280 [229 P.2d 849].)

[6]It is unnecessary for us to decide the extent of the Legislature's power in dealing with the problem of the right of immediate possession and we express no opinion on that issue. (See Taylor, *Possession Prior to Final Judgment In California Condemnation Procedure,* 7 Santa Clara Law. 37, 60.)

prior to a jury actually fixing the compensation to be paid."[7] (Italics supplied.)

In 1934, when section 14 of article I was further amended to extend the right of immediate possession to land sought for "reservoir purposes" the arguments to the voters in support of that amendment made the following reference to the existing right of immediate possession in right of way cases: " 'It has long been the policy of this State, approved by the people of California, that sovereign agencies such as the State itself, or counties or cities, should have the right, when lands are required for rights of way such as roads and highways, to take immediate possession upon payment into court of the amount fixed by the judge to cover any award by the jury as the value of the land. This same authority, so far as concerns land for rights of way, also now exists in the case of irrigation, drainage, levee, and reclamation districts.

" 'The reasons for this policy are obvious. Unless the State highway authorities, or the county or city, could take possession, upon payment into court of the amount fixed as compensation, of property required for highways, roads or streets, private property owners could hold up for years the construction of our highways. Since the soverign agency must be entitled to eventually obtain the required property, it has long been recognized that the practical and sensible thing was to allow the public agency to take possession at once so that construction work and development would not be delayed.

" 'With the increased need for conserving and utilizing our water resources this same authority is found necessary in so far as applies to lands for reservoir sites. If the policy is wise as to rights of way for roads, streets, canals and ditches, it would seem to be equally sound and necessary in the case of reservoir sites.' "[8]

 The foregoing history of the immediate possession provision of section 14 indicates that the voters, in authorizing immediate possession for "rights of way," contemplated such uses as roads, streets, highways, canals, ditches and similar uses, which frequently require a long strip of land along a particular route. This is consistent with the ordinary understanding of the words "right of way." This is also the sense in which the Legislature employed the term in prescribing what a complaint in eminent domain must contain. Subdivision 4 of section 1244 of the Code of Civil Procedure provides: "If a right of way be sought, the complaint

---

[7]As quoted in *Almada* v. *Superior Court* *(Cal.App.) 149 P.2d 61, 63.

[8]As quoted in *State of California* v. *Superior Court,* 208 Cal.App.2d 659, 662-663 [25 Cal.Rptr. 363].

---

*A hearing was granted by the Supreme Court. (Dismissed.)

must be accompanied by a map showing the location, general route, and termini of said right of way, so far as the same is involved in the action or proceeding; . . ."

While a myriad of uses may constitute uses for "rights of way," it appears clear that the voters did not intend to authorize immediate possession where, as here, a parcel of land is sought for general airport purposes. Nor would an action to condemn land for such purpose be deemed to be one in which a right of way is sought within the meaning of section 1244, subdivision 4, of the Code of Civil Procedure. While the present action merely involves the taking of petitioners' interest in a segment of a vacated street, we must be mindful of the fact that the principle we announce in the instant case would be equally applicable to an action to condemn a huge parcel of land for an intercontinental airport.

Of course, the mere fact that a particular use was nonexistent in 1918 and could not have been in the minds of the voters is not determinative. The fact that commercial airports were nonexistent in 1918 does not compel the conclusion that use for such purposes cannot be construed to be for a "right of way." (See *People* v. *Western Air Lines, Inc.,* 42 Cal.2d 621, 635 [268 P.2d 723].) We are cognizant of the salutary principle that a constitutional provision should be liberally interpreted and, when possible, should be construed to meet changing conditions and the growing needs of the people. (*Los Angeles Met. Transit Authority* v. *Public Utilities Com.,* 59 Cal.2d 863, 869 [31 Cal.Rptr. 463, 382 P.2d 583]; *People* v. *Western Air Lines, Inc., supra,* p. 635.) It can be argued with some logic that airports are "necessary adjuncts to aerial transportation and the use of aerial highways"[9] and that, therefore, use of land for an airport is for a "right of way." Nevertheless, an additional significant interpretative guide militates against our adoption of that construction.

In 1957 the Legislature proposed a constitutional amendment which would have expressly extended the right of immediate possession upon the commencement of a condemnation proceeding where land is sought for airport or school purposes. (A.C.A. No. 16, ch. 319, Stats. 1957.) The legislative counsel's analysis of the proposal as set forth in the official pamphlet to the voters stated in part: "This constitutional amendment would modify Section 14 and *extend this right* of 'immediate possession' to two additional classes of condemning actions. The two new exceptions would be (1) any action by a public agency which has the power

---

[9]Section 26020 of the Government Code authorizing counties to establish airports provides in part:

"As a necessary adjunct to aerial transportation and the use of aerial highways, the board of supervisors may provide and maintain public airports and landing places for aerial traffic for the use of the public."

to construct and maintain an airport to condemn land or a right of way for airport purposes; and (2) any action by a school district to condemn land or a right of way for school purposes." (Italics added.)[10]

The arguments to the voters in favor of the amendment insofar as it related to airports stated: "It has been found that a great delay has been caused in proper construction and expansion of airport facilities due to the inability of public agencies to acquire within a reasonable time lands needed for such construction and expansion. This amendment would make possible the timely construction of the facilities which are needed so badly in many areas of the State in order to insure the continued growth and strength of our air transportation system."

The proposed amendment was rejected by a vote of 1,277,452 in favor and 2,847,379 against the measure.

Submission of the proposal to the voters constituted, at least by implication, a legislative interpretation that existing provisions of section 14 do not authorize immediate possession of land sought for airport purposes. When a constitutional provision is susceptible of more than one reasonable interpretation, an interpretation placed upon it by the Legislature is of persuasive significance (*Lundberg* v. *County of Alameda,* 46 Cal.2d 644, 652 [298 P.2d 1]; *Reynolds* v. *State Board of Equalization,* 29 Cal.2d 137, 140 [173 P.2d 551, 174 P.2d 4]; *Department of Alcoholic Beverage Control* v. *Superior Court,* 268 Cal.App.2d 67, 74 [73 Cal. Rptr. 780]).

The California Law Revision Commission has recognized the restrictive nature of the existing provisions of section 14 relating to immediate possession. In 1961, following an intensive study, the commission submitted to the Governor and Legislature its report and recommendations on the subject of "taking possession and passage of title in eminent domain proceedings." (3 Cal. Law Revision Com. Rep. (1961) p. B-11.) In recommending revision of section 14, the Commission stated: "Another defect in the present constitutional provisions is that they severely limit the agencies by which and the purposes for which immediate possession may be taken. The right of immediate possession is of great value to the public, for it permits the immediate construction of needed public projects. The Legislature should, therefore, have the power to decide from time to time what agencies are to have the power and for what purposes the power may be exercised. It should not be necessary to amend the Constitution each time a change in the needs of the people of

---

[10]The legislative counsel's analysis of a proposed constitutional amendment may be considered as an aid to its interpretation. (*Carter* v. *Seaboard Finance Co.,* 33 Cal.2d 564, 580-581 [203 P.2d 758].)

the State warrants either an extension or contraction of the purposes for which the right of immediate possession may be exercised." (3 Cal. Law Revision Com. Rep. (1961) pp. B-10–B-11.)

In determining whether general airport uses fall within the term "right of way," the foregoing history of immediate possession in California condemnation law cannot be disregarded. ■■■ We conclude that neither section 14 of article I of the Constitution nor section 1243.4 of the Code of Civil Procedure presently authorizes immediate possession of land sought to be condemned for general airport purposes.

Let a peremptory writ of mandate issue commanding the trial court to vacate the order of immediate possession.

Kerrigan, Acting P. J., concurred.