[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.,* Slip Opinion No. 2017-Ohio-8348.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-8348

THE STATE EX REL. NATIONAL LIME AND STONE COMPANY, APPELLANT, *v.* MARION COUNTY BOARD OF COMMISSIONERS, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.,* Slip Opinion No. 2017-Ohio-8348.]

*Annexation—R.C. 709.02—Railroad—Right-of-way—Definition of "owner"— Because a railroad's property interest in a territory proposed for annexation is a railroad right-of-way held in fee, the railroad falls within the exception to the definition of "owner" set forth in R.C. 709.02(E).*

(No. 2016-0505—Submitted April 4, 2017—Decided October 31, 2017.)

APPEAL from the Court of Appeals for Marion County,

No. 09-15-024, 2016-Ohio-859.

_____

**Per Curiam.**

{¶ 1} The primary issue in this case is whether a railroad that holds land within a territory proposed for annexation is an "owner" as defined in R.C. 709.02

such that it must consent to the annexation *or* whether its property interest falls within an exception in that definition for "railroad, utility, street, and highway rights-of-way held in fee, by easement, or by dedication and acceptance." The answer to that question turns on whether the railroad's property interest is a railroad right-of-way held in fee.

{¶ 2} The court of appeals dismissed a complaint for a writ of mandamus filed by appellant, National Lime and Stone Company, seeking to compel appellee, the Marion County Board of Commissioners, to approve a petition for annexation. For the reasons that follow, we reverse the judgment of the court of appeals and hold that the railroad's property interest in the territory proposed for annexation in this case is a railroad right-of-way held in fee and that consequently, the railroad falls within the exception to the definition of "owner" set forth in R.C. 709.02(E). Therefore, we hold that the railroad is not a required signatory to the annexation petition at issue in this case. Because we find that National Lime has satisfied each of the statutory conditions for annexation and that the board therefore has no discretion to deny the petition, we issue a writ of mandamus compelling the board to approve the annexation petition.

**Facts and Procedural History**

{¶ 3} National Lime, a limestone-aggregates and industrial-minerals mining company, seeks to annex 224.257 acres of its real property in Grand Prairie Township, Marion County, Ohio, to the city of Marion under R.C. 709.021 and 709.023. One of the key requirements for the annexation, which was expedited under R.C. 709.023(E), is that all "owners" of land within the territory proposed for annexation sign the petition for annexation.

{¶ 4} Railroad tracks used by Norfolk Southern Railway ("Norfolk") pass through the southeast portion of the property that National Lime seeks to annex. Norfolk's property interest in the strip of land over which its tracks run is described in two deeds transferring the property to Norfolk's predecessors in interest.

**{¶ 5}** The first deed, executed in 1892, conveyed a 4.35-acre strip of land just 60 feet wide, over which one of the predecessor railroad companies had an existing track, to the predecessor railroad company and its assigns, forever. The second deed, executed in 1896, likewise conveyed to another predecessor railroad company and "its successors and assigns forever" a 75-foot wide, 1.075-acre strip of land adjacent to the 4.35-acre parcel previously conveyed. The second deed also specified that as part of the consideration for the transfer, the railroad company agreed to construct on the conveyed real estate a spur of track, stock pens, and a scale as well as a shelter for passengers and freight.

**{¶ 6}** Neither deed identified the conveyed interest in the property as an easement or right-of-way or provided for a forfeiture or reversion of interests if a time came when the land was no longer used for purposes of operating a railroad. The parties do not dispute that the deeds grant a fee simple interest in the land.

**{¶ 7}** National Lime did not notify Norfolk of or seek its consent to the annexation petition, believing that the company fell within an exception—for railroad rights-of-way held in fee—to the definition of "owner" in R.C. 709.02(E) that would render its consent to the annexation unnecessary.

**{¶ 8}** The city of Marion issued a resolution approving the annexation petition. But after conducting a special meeting, the county commissioners unanimously passed a resolution objecting to the proposed annexation on two grounds. First, the commissioners found that Norfolk was an "owner" of real property in the territory proposed for annexation and that National Lime had failed to obtain the railway's signature on the annexation petition. *See* R.C. 709.02(E). Second, they found that because Norfolk's land separated "the bulk" of National Lime's territory from the city's corporation limits, the land to be annexed did not have the statutory minimum contiguous border with the city. R.C. 709.023(E)(4) (territory to be annexed must share a continuous contiguous boundary of at least five percent of its perimeter with the municipal corporation).

**{¶ 9}** National Lime sought a writ of mandamus from the Court of Appeals for Marion County to compel the commissioners to approve its annexation petition, arguing that Norfolk was not an owner as defined by the plain language of the statute and that its signature, therefore, was not a condition for approval of the annexation petition. The court of appeals disagreed and dismissed the petition. 2016 Ohio-859, 62 N.E.3d 569, ¶ 12, 19-20 (holding that Norfolk owned the land in question in fee and therefore needed to consent to the annexation).

**{¶ 10}** This cause is now before us upon National Lime's appeal as of right.

**Analysis**

*Statutory Interpretation*

**{¶ 11}** For purposes of this annexation proceeding, R.C. 709.02(E) defines "owner" to include private corporations "seized of a freehold estate in land; *except* that easements and any railroad, utility, street, and highway rights-of-way held in fee, by easement, or by dedication and acceptance are not included within those meanings." (Emphasis added.)

**{¶ 12}** National Lime contends that the term "right-of-way," as used in R.C. 709.02(E), does not describe a specific property interest but describes the way in which a piece of property is used (as a railroad, utility, street, or highway right-of-way), and that it is followed by a list of ways in which the property may be held (in fee, by easement, or by dedication and acceptance).

**{¶ 13}** In contrast, the commissioners argue that the first meaning listed in a dictionary for a given term is its usual, normal, and customary meaning. Therefore, they claim that the usual, normal, and customary meaning of "right-of-way" is "a legal right of passage over another person's ground." Merriam-Webster, https://www.merriam-webster.com/dictionary/right-of-waywww.merriam-webster.com/dictionary/right-of-way (accessed October 26, 2017). Because Norfolk possesses a freehold estate in the land at issue rather than a right to pass over the land of another, the commissioners assert that the legislature could not

4

have intended for Norfolk's property interest to fall within the statutory exception to the definition of owner. Consequently, the commissioners maintain that they lawfully denied the annexation petition and that the court of appeals properly dismissed National Lime's mandamus action because Norfolk—an owner of property in the territory proposed for annexation—did not sign the petition for annexation.

{¶ 14} Statutory interpretation is a question of law that we review de novo. *Ceccarelli v. Levin*, 127 Ohio St.3d 231, 2010-Ohio-5681, 938 N.E.2d 342, ¶ 8. When construing a statute, this court's paramount concern is legislative intent. *State ex rel. Musial v. N. Olmsted*, 106 Ohio St.3d 459, 2005-Ohio-5521, 835 N.E.2d 1243, ¶ 23. "If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996). R.C. 1.42 instructs: "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Our role is to evaluate the statute as a whole and to interpret it in a manner that will give effect to every word and clause, avoiding a construction that will render a provision meaningless or inoperative. *State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 373, 116 N.E. 516 (1917).

{¶ 15} We have previously acknowledged that the term "rights-of-way" as used in R.C. 709.02(E) is ambiguous because it may refer to the land itself or the right to use the land. *State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Commrs.*, 112 Ohio St.3d 262, 2006-Ohio-6411, 858 N.E.2d 1193, ¶ 25. Indeed, in 1891, the United States Supreme Court noted the multiple meanings of the term, stating, "It sometimes is used to describe a right belonging to a party, a right of passage over any tract; and it is also used to describe that strip of land which

railroad companies take upon which to construct their road-bed." *Joy v. St. Louis*, 138 U.S. 1, 44, 11 S.Ct. 243, 34 L.Ed. 843 (1891); *see also McCotter v. Barnes*, 247 N.C. 480, 485, 101 S.E.2d 330 (1958); *Quinn v. Pere Marquette Ry. Co*., 256 Mich. 143, 150, 239 N.W. 376 (1931); *Miro v. Superior Court of San Bernandino Cty.*, 5 Cal.App.3d 87, 96, 84 Cal.Rptr. 874 (4th Dist.1970) (all recognizing the dual meanings of the term right-of-way).

{¶ 16} The commissioners' interpretation of the term, however, equates all rights-of-way with easements—which are commonly defined as "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road)." *Black's Law Dictionary* 622 (10th Ed.2014). But R.C. 709.02(E) also explicitly excepts easements from the interests in land that will qualify a holder as an owner in annexation proceedings conducted pursuant to R.C. 709.021 through 709.024. Thus, the interpretation advanced by the commissioners renders the term "rights-of-way" mere surplusage. Furthermore, to the extent that the commissioners' interpretation contemplates that the fee interest in the property must be held by a person or entity separate from the holder of a right-of-way, it affords no effect to the words of R.C. 709.02(E): "held in fee, by easement, or by dedication and acceptance." *See, e.g.*, *Cincinnati, Hamilton & Dayton Ry. Co. v. Wachter*, 70 Ohio St. 113, 118, 70 N.E. 974 (1904) (recognizing that an easement necessarily implies a fee interest held by another).

{¶ 17} The inevitable result of the commissioners' interpretation would be that any railroad that holds a fee interest in a territory proposed for annexation will be deemed to be an owner whose consent is required for the annexation to proceed. Yet the plain language of the statute demonstrates a legislative intent to exempt *some* railroad interests held in fee—specifically rights-of-way in fee—from the statutory definition of "owner" in such proceedings.

**{¶ 18}** Consistently with the commissioners' argument, the court of appeals held that Norfolk is an "owner" within the meaning of R.C. 709.02(E) because it is seized of a freehold in the land and nothing in the deed supports National Lime's assertion that the interest is "an easement, right-of-way, or a 'fee for the purpose of operating a railroad.' "  2016-Ohio-859, 62 N.E.3d 569, ¶ 12.  In construing the R.C. 709.02(E) definition of "owner" and the exception to that definition, the court of appeals noted our holding that landowners whose only property interest in a territory proposed for annexation was a fee interest in the property burdened by a roadway easement must be counted as "owners," *id*. at ¶ 17, because they have " 'an undeniable and definite' property interest in the narrow strip of real estate located in the territory proposed for annexation," *id.* at ¶ 18, quoting *Butler Twp.*, 112 Ohio St.3d 262, 2006-Ohio-6411, 856 N.E.2d 119, at ¶ 46.

**{¶ 19}** In *Butler Township*, we addressed whether it was "the intent of the General Assembly, as expressed within R.C. 709.02(E), that a landholder who owns in fee simple the property underlying a roadway over which a political subdivision holds an easement must be counted as an owner for purposes of determining the percentage of owners who have signed an annexation petition." *Id.* at ¶ 16.  More specifically, we considered whether the legislature intended to exclude from the statutory definition of "owner" all holders of any interest concerning an easement or right-of-way (i.e., the political subdivision that held the right-of-way *and* the holder of any fee interest in the underlying property) *or* just the holders of the lesser interest in the subject property (i.e., *just* the political subdivision that held the right-of-way). *Id.* at ¶ 21-22.

**{¶ 20}** In resolving that issue, we recognized that the statutory exception for "rights-of-way held in fee, by easement, or by dedication and acceptance" was not intended to apply to *all* holders of such property interests.  Instead, we expressed our belief that it was likely intended to apply only to rights-of-way held by political subdivisions, railroads, or utility companies—and that the excluded landowners in

that case did not fall into any of those categories. *Id.* at ¶ 41. Finding that neither of the statutory interpretations advanced by the parties had "emerged as significantly more likely than the other," *id*. at ¶ 44, we held that the landholders who owned the property underlying the roadway in fee simple were "owners" as defined by R.C. 709.02(E) and ruled that their consent was required for the annexation to proceed, *id.* at ¶ 46.

{¶ 21} In this case, however, Norfolk *is* a railroad company, and it holds both of the property interests at issue in *Butler Township* (i.e., the right-of-way over the land and the land itself). Therefore, *Butler Township* offers little guidance whether the statutory exception for railroad rights-of-way held in fee applies to the railroad's property interest in this case.

{¶ 22} In contrast to the statutory interpretation advanced by the commissioners and adopted by the court of appeals, the interpretation advanced by National Lime—that the strip of land upon which a railroad company constructs its roadbed is necessarily a right-of-way, whether owned in fee, taken by easement, or by dedication and acceptance—gives effect to each of the words in the statute and conforms to the technical or particular meaning of the term "right-of-way" as it is used in the railroad industry.

{¶ 23} That definition was recognized more than 125 years ago, *see Joy*, 138 U.S. at 44, 11 S.Ct. 243, 34 L.Ed. 843, and it remains viable today. *Webster's Third New International Dictionary* recognizes that a "right-of-way" can refer to the right to use the land *or* to the land itself by offering alternate definitions that include "the area or way over which a right-of-way exists," "the strip of land devoted to or over which is built a public road," "the land occupied by a railroad for its tracks," and "the land used by a public utility (as for an electric power transmission line * * *)." *Id*. at 1956 (2002). Moreover, the interpretation advanced by National Lime is consistent with current railroad terminology and usage. *See* BNSF Railway, *Glossary of Railroad Terminology & Jargon*,

8

http://www.bnsf.com/ship-with-bnsf/pricing-and-tools/pdf/glossary.pdf (accessed October 26, 2017) (defining "right-of-way" as "[p]roperty owned by a railroad over which tracks have been laid"); CSX Corporation, *Railroad Dictionary*, https://www.csx.com/index.cfm/about-us/company-overview/railroad-dictionary/?i=R (accessed October 26, 2017) ("In the strictest sense, [a right-of-way is] land or water rights necessary for the roadbed and its accessories. However, it is now loosely used to describe property owned and/or operated over by a railroad").

{¶ 24} Therefore, we hold that the term "right-of-way" and the phrase "railroad right-of-way held in fee" as they appear in R.C. 709.02(E) describe the way in which a piece of property is used—the strip of land upon which railroad companies construct their roadbed and its accessories—followed by a list of ways in which the property may be held, that is, in fee, by easement, or by dedication and acceptance. This interpretation gives meaning to each word of the statutory exception and effectuates the General Assembly's intent to exclude the holders of railroad, utility, street, and highway rights-of-way—whether the holder possesses the right to pass over the lands of another or owns the land under the right of passage in fee—from the definition of "owner" for purposes of these expedited annexation proceedings. It is also consistent with the instruction of R.C. 1.42 that "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." And it leaves open the possibility that a railroad's consent may still be a condition for annexation if it owns real property in a territory proposed for annexation that is used for purposes other than as a right-of-way.

{¶ 25} In this case, two parcels of land are at issue: one 60-foot wide strip over which Norfolk's railroad tracks pass and a 75-foot wide strip running parallel to that track, which the deed states was to be used for accessories including "a spur of track, stock pens, and scale, as well as a shelter for passengers and freight."

Based on the foregoing, we hold that both parcels constitute a "railroad right-of-way held in fee." We also hold that Norfolk falls within the exception to the definition of "owner" set forth in R.C. 709.02(E) and need not consent to the annexation.

*Mandamus is Appropriate*

**{¶ 26}** To be entitled to extraordinary relief in mandamus, National Lime must establish a clear legal right to the requested relief by demonstrating that it has satisfied all of the statutory conditions for annexation. If each of the conditions of R.C. 709.023(E) has been met, the commissioners have a clear legal duty to approve the annexation. R.C. 709.023(F). Because R.C. 709.023(G) states that there is no appeal in law or equity from any resolution of the commissioners regarding an expedited annexation but that "any party may seek a writ of mandamus to compel the board of county commissioners to perform its duties under this section," the third requirement for the issuance of the writ—that the petitioner lacks an adequate remedy in the ordinary course of law—has been satisfied. *See, e.g.*, *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6 (stating that to be entitled to a writ of mandamus, a petitioner must establish a clear legal right to the requested relief, a clear legal duty on the part of the respondent to provide it, and the absence of an adequate remedy in the ordinary course of law).

**{¶ 27}** Because the court of appeals found that Norfolk's consent to the annexation was required under R.C. 709.021(A) but that its representative did not sign the petition, that court did not address the remaining six statutory conditions for the annexation set forth in R.C. 709.023(E)(4). 2016-Ohio-859, 62 N.E.3d 569, ¶ 19. However, this court possesses discretionary, plenary authority to fully address the merits of an extraordinary action as if it were originally filed in this court, without the necessity of remand, and the record in this case is sufficient for us to decide the merits of National Lime's petition. *See, e.g.*, *State ex rel. Dreamer v. Mason*, 129 Ohio St.3d 94, 2011-Ohio-2318, 950 N.E.2d 519, ¶ 18, fn. 2; *State*

*ex rel. Natl. Elec. Contrs. Assn., Ohio Conference v. Ohio Bur. of Emp. Servs.*, 88 Ohio St.3d 577, 579, 728 N.E.2d 395 (2000).

{¶ 28} National Lime's petition satisfies the requirements as to form, content, and filing set forth in R.C. 709.021 and 709.02(C), (D), and (E). R.C. 709.023(E)(1). The petition was signed by all of the owners of real estate in the territory; we have already determined that Norfolk is not an owner as the term is defined by R.C. 709.023(E)(2). The plat and legal description of the territory also demonstrates that the parcel to be annexed consists of 224.257 acres—well below the 500-acre limit specified in R.C. 709.023(E)(3).

{¶ 29} Under R.C. 709.023(E)(4), the territory proposed for annexation must share a continuous contiguous boundary of at least five percent of its perimeter with the municipal corporation. In the proceedings below, the commissioners found that Norfolk's parcel of land divides National Lime's real property such that the bulk of the parcel it sought to annex has no contiguous boundary with the city's corporation limits. National Lime contends that because Norfolk is not an owner whose consent is required for purposes of this statutory annexation proceeding, its right-of-way cannot be deemed to sever into two parcels the territory proposed for annexation. And it argues that the territory it seeks to annex, which includes the railroad property, shares a continuous contiguous boundary of 12.5 percent of its perimeter with the city of Marion—well above the five percent required by the statute.

{¶ 30} To demonstrate that the territory proposed for annexation shares a sufficiently contiguous boundary with the city, National Lime has submitted a survey plat. The plat shows that the territory proposed for annexation is roughly the shape of a trapezoid with a perimeter of 13,781.07 feet, that the railroad track passes diagonally through the southeast corner of the territory, and that the border of the territory proposed for annexation—extending roughly from the southeastern corner of the railroad's property to the southeasternmost point of the territory

proposed for annexation—shares a continuous contiguous border of approximately 1330 feet with the city of Marion. Therefore, we find that the territory proposed for annexation shares a continuous contiguous boundary of at least five percent of the territory's perimeter in accordance with R.C. 709.023(E)(4).

**{¶ 31}** In addition, the plat shows that the annexation will not create an unincorporated area of the township that is completely surrounded by the territory proposed for annexation. R.C. 709.023(E)(5). The city of Marion has identified and agreed to provide ordinary city services to the territory proposed for annexation and agreed to zone the territory for mineral extraction, while also providing for a buffer zone between the mineral-extraction activity and adjacent township land that is zoned for residential use. *See* R.C. 709.023(C) (buffer zone) and 709.023(E)(6) (city must agree to provide services). The city has also determined that the street known as Linn Hipsher Road will not be divided or segmented by the boundary in a way that creates a road-maintenance problem. R.C. 709.023(E)(7).

**{¶ 32}** On these facts, we find that National Lime has satisfied all the conditions for annexation identified in R.C. 709.023(E)(1) through (7). We note, as provided in R.C. 709.023(F), that if the conditions specified in division (E) of this section have been met, the board of county commissioners must grant the annexation. Therefore, we find that National Lime has established a clear legal right to the requested relief and a clear legal duty on the part of the commissioners to provide it and that R.C. 709.023(G) expressly provides that mandamus is the appropriate remedy to compel the commissioners to perform their duties in such annexation proceedings.

### Conclusion

**{¶ 33}** Based on the foregoing, we hold that because Norfolk owns a railroad right-of-way in fee, it falls within the exception to the definition of "owner" set forth in R.C. 709.02(E). Therefore, we hold that its signature is not required on National Lime's petition for annexation. In addition, we find that National Lime

has satisfied each of the statutory conditions for annexation. We reverse the judgment of the court of appeals, and we issue a writ of mandamus compelling the Marion County Board of Commissioners to approve the petition for annexation.

Judgment reversed<br>and writ granted.

O'CONNOR, C.J., and FRENCH, O'NEILL, and FISCHER, JJ., concur.

KENNEDY, J., concurs in part and dissents in part, with an opinion joined by DeWINE, J.

O'DONNELL, J., dissents and would affirm the judgment of the court of appeals.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 34} "[I]t is the policy of the state of Ohio to encourage annexation by municipalities of adjacent territory." *Middletown v. McGee*, 39 Ohio St.3d 284, 285, 530 N.E.2d 902 (1988). One of the legislative intentions in enacting annexation statutes was " 'to give an owner of property freedom of choice as to the governmental subdivision in which he desires his property to be located.' " *Id.* at 286, quoting *Toledo Trust Co. v. Bd. of Commrs.,* 62 Ohio App.2d 121, 124, 404 N.E.2d 764 (6th Dist.1977).

{¶ 35} In Ohio, the traditional method of annexation requires a number of steps before annexation is complete. *See* R.C. 709.02 to 709.11. However, in 2001, the General Assembly enacted three expedited methods for annexation. R.C. 709.022 to 709.024. *See Sugarcreek Twp. v. Centerville*, 133 Ohio St.3d 467, 2012-Ohio-4649, 979 N.E.2d 261, ¶ 4.

{¶ 36} In this case, appellant, National Lime and Stone ("National Lime"), filed a petition for an expedited type-two annexation. *See* R.C. 709.023. Pursuant to this procedure, the Marion County Board of Commissioners was required to grant the annexation when the statutory requirements for filing the petition were

met and all the owners of property subject to annexation approved the annexation. R.C. 709.023(F).

{¶ 37} Norfolk Southern Railway ("Norfolk") is the fee-simple owner of two parcels of land in the territory proposed for annexation that are at the center of this dispute. One parcel, conveyed by deed in 1892, is a 4.35-acre strip of land just 60 feet wide, over which one of Norfolk's predecessor railroad companies had an existing track ("first parcel"). The other parcel, conveyed by deed four years later in 1896, is a 75-foot wide, 1.075-acre strip of land ("second parcel") adjacent to the first parcel, upon which a length of spur of track necessary to accommodate the business of the railroad, stock pens, a scale, and a temporary shelter for passengers and freight, and later a permanent station building, if warranted, were to be constructed. In setting out the boundary lines for the second parcel, the second deed refers to the boundary line of the first parcel as the "right-of-way line."

{¶ 38} I agree with the majority that Norfolk's first parcel falls within the meaning of "railroad right-of-way" in R.C. 709.02(E). However, the majority states that its interpretation of the phrase "railroad right-of-way held in fee" in R.C. 709.02(E) "leaves open the possibility that a railroad's consent may still be a condition for annexation if it owns real property in a territory proposed for annexation that is used for purposes other than as a right-of way." Majority opinion at ¶ 24. The second parcel falls into this category because it is not used for a right-of-way. Therefore, I concur in part and dissent in part, and I would affirm the judgment of the court of appeals dismissing the complaint for a writ of mandamus.

{¶ 39} Principles of statutory construction guide the resolution of whether Norfolk holds the second parcel of land as a "right-of-way." The statute at issue, R.C. 709.02(E), defines "owner" as one seized of a freehold estate in land, but exempts from those estates any "easements and any railroad, utility, street, and highway rights-of-way held in fee, by easement, or by dedication and acceptance."

**{¶ 40}** The majority properly relies on *Webster's Third New International Dictionary*, which recognizes that in the context of railroads, a "right-of-way" can be "the land occupied by a railroad for its tracks." *Id*. at 1956 (2002). The majority further notes that the term "right-of-way" is defined in the CSX Corporation's *Railroad Dictionary*, https://www.csx.com/index.cfm/about-us/company-overview/railroad-dictionary/?i=R (accessed October 26, 2017) (a "right-of-way" is "[i]n the strictest sense, land or water rights necessary for the roadbed and its accessories").

**{¶ 41}** The deed to the second parcel provides:

> The Columbus, Sandusky & Hocking Railroad Company, hereby agree [sic] to construct on said real estate herein conveyed, a spur track of sufficient length to accommodate the business of the Railroad Company at that point, also to construct stock pens and scale and further agree [sic] to provide a temporary shelter for passengers and freight until the business of said Railroad Company warrants the same, then said Railroad Company shall erect a permanent station building.

Because the second parcel was purchased by the railroad to build stock pens, a scale, a shelter for passengers and freight, and a permanent station building, if warranted, it is not a "right-of-way."

**{¶ 42}** The majority seemingly fits the second parcel into CSX's definition by finding it to be an "accessory." Majority opinion at ¶ 24. The majority's conclusion is erroneous. In CSX's definition of "right-of-way," "its" is a possessive pronoun; it is used in place of the noun "roadbed" and indicates the roadbed's possession of accessories. Consequently, only those items that are the *roadbed's* accessories are included within the definition of "right-of-way."

**{¶ 43}** "Roadbed," as used in the railroad industry, is defined as "[t]he foundation on which a track and ballast rest." CSX Corporation, *Railroad Dictionary*, https://www.csx.com/index.cfm/about-us/company-overview/railroad -dictionary/?i=R (accessed October 26, 2017). This definition indicates that the foundation is the roadbed and the track and ballast are the roadbed's accessories— the objects or devices that augment the usefulness of the foundation; it does not include stock pens, a scale, a shelter for passengers and freight, and a permanent station building as accessories. To conclude that these items are the roadbed's accessories defies the rules of grammar and ignores technical definitions. *See* R.C. 1.42.

> Legislation has an aim; it seeks to obviate some mischief, to supply an inadequacy, to effect a change of policy, to formulate a plan of government. That aim, that policy is not drawn, like nitrogen, out of the air; it is evinced in the language of the statute, as read in the light of other external manifestations of purpose. That is what the judge must seek and effectuate * * *. [T]he purpose which a court must effectuate is not that which [the legislature] should have enacted, or would have. It is that which it did enact * * * because it may fairly be said to be imbedded in the statute, even if a specific manifestation was not thought of, as is often the very reason for casting a statute in very general terms.

Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum.L.Rev. 527, 538-539 (1947).

**{¶ 44}** Frankfurter's words are at the very core of the role of the judiciary. In designing the annexation process in R.C. 709.023, the legislature intended for *all* affected property owners to have a voice in the annexation of their property into

16

a municipality. *See* R.C. 709.023(E) (all owners of real estate in the territory proposed for annexation must sign the petition). Implementing the General Assembly's intention is imperative, because annexation will result in the owner and the property being subject to a municipal form of government and the possibility of new regulatory controls and burdens as well as taxes. With its expansive application of the term "railroad right-of-way held in fee," the majority deprives Norfolk of its freedom to choose in which governmental subdivision its property is to be located, and it fails to give effect to the intention of the legislature.

{¶ 45} While "[m]ost of us tend to be swayed by what we read[, j]udges are not superhuman. They, too, are mortals. This is why they have to be exceptionally careful in rendering decisions, which cause unintended consequences." Kapil Sibal, *Circumspection, My Lords*, The Indian Express (Apr. 21, 2017), available at *http://indianexpress.com/article/opinion/columns/circumspection-my-lords-article -142-use-judicial-diktats-4621562/*. Therefore, forefront in our minds should be the unintended consequences that will result from the majority's decision to apply the term "railroad right-of-way" so expansively.

{¶ 46} While I can appreciate the advantages that being annexed into the city of Marion might bring National Lime, that annexation cannot occur in violation of the General Assembly's mandates and to the detriment of Norfolk's freedom of choice regarding its own fee-simple estate. The real property conveyed by the deed for the second parcel is not a "railroad right-of-way held in fee." Upon that parcel, according to the deed, was to be built stock pens, a scale, a shelter for passengers and freight, and a permanent station building. Because the second parcel does not fall within the exceptions to a freehold estate set forth in the definition of "owner" in R.C. 709.02(E), Norfolk's consent to the annexation petition was required. *See* R.C. 709.02(A). Since National Lime did not have all owners of real estate in the territory proposed for annexation sign the petition for annexation, as required by R.C. 709.023(E)(1) and (2), it has not established a clear legal right to compel the

Marion County Board of Commissioners to approve a petition for annexation. Therefore, I concur in part and dissent in part, and I would affirm the judgment of the court of appeals dismissing the complaint for a writ of mandamus.

DeWINE, J., concurs in the foregoing opinion.

_____

Marshall & Melhorn, L.L.C., Thomas W. Palmer, and Meghan Anderson Roth; and Bott Law Group, L.L.C., Brian P. Barger, and Mac Taylor, for appellant.

Brent W. Yager, Marion County Prosecuting Attorney, for appellee.

Brady, Coyle & Schmidt, Ltd., and Margaret G. Beck, urging reversal for amici curiae, Ohio Concrete Association, Ohio Home Builders Association, Associated General Contractors of Ohio, Ohio Contractors Association, Ohio Aggregates and Industrial Minerals Association, and Flexible Pavements of Ohio.

_____