OPINION
{¶ 1} This matter is before the Court on the Petition for Writ of Mandamus of Relators, Overholser Builders, LLC; James Davis, Nancy Davis, Gary Durst; Linda Durst and Dawn Annette Foreman Mishler ("Relators") filed May 1, 2007 against the Board of County *Page 2 
Commissioners of Clark County, Ohio, and Commissioners Roger Tackett, David Hartley, John Detrick, as well as Michelle Noble, Clerk ("Board"). The Relators own parcels of real property within Springfield Township, Clark County, and they unanimously sought to have 61.38 acres annexed to the City of Springfield, Ohio, by filing a petition for annexation with the Board. On March 13, 2007, the Board adopted Resolution 24607, denying the petition because "the territory described in the petition is not contiguous to the City of Springfield, as required by ORC 709.021(A) and 709.022."
 {¶ 2} After Relators filed their Petition for Writ of Mandamus, the Board filed a Motion to Dismiss and Brief in Support of Motion. Relators then filed a Brief in Opposition to Respondents' Motion to Dismiss. On November 21, 2007, we issued a per curiam Decision and Entry overruling the Board's motion to dismiss, and the matter is now before us on the Briefs of Relators and the Board, and the Reply Brief of Relators.
 {¶ 3} The parties filed stipulations of fact on February 26, 2008, stating in relevant part, "The annexation petition satisfied all other statutory requirements for an expedited annexation by unanimous consent as provided in Sections 709.021 and 709.022 of the Ohio Revised Code except that Respondents deny that the territory sought to be annexed is adjacent to and contiguous with the existing boundary of the City of Springfield, Ohio, whereas Relators contend that the territory satisfies the requirement of adjacency and contiguity under Section 709.021 and709.022 of the Revised Code."
 {¶ 4} Relators assert one "argument" as follows:
 {¶ 5} "RESPONDENTS HAD A CLEAR LEGAL DUTY UNDER OHIO REVISED *Page 3 
CODE SECTIONS 709.021 AND 709.022 TO APPROVE RELATOR'S ANNEXATION PETITION, AND RELATORS ARE ENTITLED TO A WRIT OF MANDAMUS DIRECTING RESPONDENTS TO PERFORM SUCH DUTY."
 {¶ 6} As we previously noted in overruling the Board's motion to dismiss, "It is well-established that a writ of mandamus will issue if the party seeking the writ demonstrates that respondent is under a clear legal duty to perform the requested act, that there is a clear legal right to the requested relief, and that there is no plain and adequate remedy in the ordinary course of the law." (citations omitted).State ex rel. Overholser Builders, LLC, et al v. Board of Cty. Comms. ofClark County, Clark App. No. 2007 CA 36, 2007-Ohio-7230, ¶ 16.
 {¶ 7} By way of background, in their motion to dismiss, the Board argued, "the Ohio Legislature intended not to permit mandamus actions in connection with proceedings under R.C. 709.022." In overruling the Board's motion to dismiss, we determined, when a valid petition for annexation is filed pursuant to R.C. 709.022, "that statute creates a legal duty on the part of the board of county commissioners to grant the petition and a corresponding right on the part of the annexation petitioners to have the petition granted." Id., at ¶ 15. Pursuant to Section 16, Article I of the Ohio Constitution, which provides, "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay," the right created by the filing of a valid petition for annexation pursuant to R.C. 709.022, cannot exist without a remedy. R.C. 709.07, which authorizes appeals under R.C. 2506, does not apply to annexation petitions filed pursuant to R.C. 709.022. R.C. 709.021(C). In other words, annexation petitioners, assuming a valid annexation petition exists, have no plain and adequate remedy in *Page 4 
the ordinary course of the law, making an action in mandamus the appropriate means to seek a remedy.
 {¶ 8} Since we found that the third element of the test for a writ of mandamus has been met, we must next determine whether or not the Board has a clear legal duty to act, and whether Relators have a clear legal right.
 {¶ 9} "As revealed by the statutes enacted by the General Assembly that are currently in force, it is the policy of the state of Ohio to encourage annexation by municipalities of adjacent territory."Middletown v. McGee (1988), 39 Ohio St.3d 284, 285, 530 N.E.2d 902. "`[Annexation is strictly a statutory process.' (Internal citation omitted). Consequently, the procedures for annexation and for challenging an annexation must be provided by the General Assembly.
 {¶ 10} "Since 2001, R.C. Chapter 709 has provided four procedures for the annexation of property. 2000 Am. Sub. S.B. No. 5 (`Senate Bill 5'). Three of those procedures are expedited procedures that may be used when all of the owners of the property within the annexation territory sign the petition for annexation. See R.C. 709.021, 709.022, 709.023, and709.024. Under each of these procedures, the owners of real estate contiguous to a municipal corporation may petition for annexation to that municipal corporation. R.C. 709.02 (A)." State ex rel. Butler Twp.Bd. Of Trustees v. Montgomery Cty Bd. of Commrs., 162 Ohio App.3d 394,2005-Ohio-3872, at ¶ 9-10.
 {¶ 11} R.C. 709.021(A) provides, "When a petition signed by all of the owners of real estate in the unincorporated territory of a township proposed for annexation requests the annexation of that territory to a municipal corporation contiguous to that territory under one of *Page 5 
the special procedures provided for annexation in sections 709.022,709.023, and 709.024 of the Revised Code, the annexation proceedings shall be conducted under those sections to the exclusion of any other provisions of this chapter unless otherwise provided in this section or the special procedure section chosen."
 {¶ 12} R.C. 709.022 (A) provides, "A petition filed under section 709.021 of the Revised Code that requests to follow this section is for the special procedure of annexing land with the consent of all parties. The petition shall be accompanied by a certified copy of an annexation agreement provided for in section 709.192 of the Revised Code or of a cooperative economic development agreement provided for in section 701.07 of the Revised Code, that is entered into by the municipal corporation and each township any portion of which is included within the territory proposed for annexation. Upon the receipt of the petition and the applicable agreement, the board of county commissioners, at the board's next regular session, shall enter upon its journal a resolution granting the annexation, without holding a hearing."
 I. Arguments {¶ 13} According to Relators, annexation under R.C. 709.022 is appropriate when the landowners unanimously request annexation and the annexing municipality and township in which the annexation territory is located have entered into a cooperative economic development agreement under R.C. 701.07. Relators argue that the Board's determination regarding contiguity was in error and that the Board both exceeded the authority conferred upon it by R.C. 709.021 and 709.022 and imposed a standard for contiguity that has no application under those statutes. Relators argue, "the annexation territory abuts the existing boundary and touches it for a distance of 200 feet. * * * Respondent's inquiry as to contiguity should have ended there, *Page 6 
since neither R.C. 709.021 nor R.C. 709.022 specifies any greater requirement, and no case law decided suggests a more stringent standard."
 {¶ 14} Relators contend, "Not only does R.C. 709.021 exempt special expedited annexations from the requirements of the statutes governing conventional annexation, the language of the statute indicates that contiguity is to be determined in the context of the particular annexation proceeding chosen." According to Relators, the word "contiguous" relates to the phrase, "under one of the special procedures," and in support of this interpretation they point out that one of the three special annexation statutes listed in R.C. 709.021, namely R.C. 709.023, contains a specific contiguity provision that applies only to annexations brought under that statute. R.C. 709.023
requires the board of county commissioners to determine in part that the "territory proposed for annexation shares a contiguous boundary with the municipal corporation to which annexation is proposed for a continuous length of at least five percent of the perimeter of the territory proposed for annexation."
 {¶ 15} Relators point out that R.C. 709.022 does not require a specific degree of contiguity.
 {¶ 16} Instead, R.C. 709.022, by requiring a CEDA under 701.07, contemplates that the municipality and township will have already agreed upon and determined what constitutes an appropriate annexation territory in terms of size and contiguity in their CEDA.
 {¶ 17} R.C. 701.07 governs Cooperative Economic Development Agreements such as the one before us and provides in relevant part, "A cooperative economic development agreement may provide for any of the following:
 {¶ 18} * * * *Page 7 
 {¶ 19} "(8) The territory to be annexed to a municipal corporation when agreed to by the municipal corporation to which annexation is proposed and the township in which the territory to be annexed is located.
 {¶ 20} * * *
 {¶ 21} "(15) Any other matter pertaining to the annexation or development of territory, whether the territory is owned by a governmental entity or a person or private entity."
 {¶ 22} Relators direct our attention to the CEDA entered into between the City of Springfield, Springfield Township, and the Board of County Commissioners which is attached to the annexation petition. Section 6 of Article II of the CEDA provides, "TOWNSHIP and CITY recognize, agree and each of their governing bodies have adopted findings in the legislation mentioned in the recitals to the Agreement that, within the territories described in Article I, the annexation of territory to CITY not customarily recognized as contiguous to the corporate boundary of City [whether due to the smallness of the area of geometric coincidence between the annexation area and the corporate boundary of CITY or the contiguity of the annexation area and the corporate boundary of the CITY being by a long and narrow strip of land] will not, in any meaningful way, be detrimental to the unity of the CITY or of TOWNSHIP and should not and will not prevent the annexation of such territory to CITY."
 {¶ 23} Relators argue that the above provision does not "contravene R.C. Chapter 709, and is a legitimate exercise of the power conferred upon the municipality and township by R.C. 701.07. Moreover, it is perfectly consistent with the intent and purpose of the special annexation provided for by R.C. 709.022. When the landowners, municipality and township have unanimously agreed to annex a territory that touches the existing municipal boundary, no *Page 8 
matter how slightly, and there has been compliance with the formalities of R.C. 709.021 and 709.022, and the applicable CEDA, the role of the board of county commissioners is very simple and very limited: to adopt a resolution approving the annexation."
 {¶ 24} Relators acknowledge the concerns expressed in Middletown v.McGee (1988), 39 Ohio St.3d 284, 530 N.E.2d 902, and relied upon by the Board. In Middletown, the annexation of a roadway leading away from an annexing municipality for several miles was determined unlawful, and the Supreme Court of Ohio addressed the issue of contiguity as follows: "The terms `adjacent,' `contiguous' and `adjoining' are all used by the Revised Code statutes governing annexation. (Internal citations omitted). These terms are not defined in the Revised Code, but are generally understood to be synonymous in Ohio and in other jurisdictions. (Internal citations omitted). While it is generally agreed that some touching of the municipality and the territory to be annexed is required, the law is unsettled as to what degree of touching is needed to fulfill the contiguity requirement. (Internal citation omitted).
 {¶ 25} "In Ohio, courts have frowned upon the use of connecting strips of land to meet the contiguity requirement when annexing outlying territory not otherwise connected to the annexing municipality. Such annexations are usually referred to as `strip, shoestring, subterfuge, corridor, and gerrymander annexations.' (Internal citations omitted). In determining whether a proposed annexation satisfies the contiguity requirement, these courts, as well as the courts of other jurisdictions, have noted that the basic concept of a municipality is that of a unified body, and have consistently inquired whether an annexing municipality would conform to this concept if a proposed annexation were to take place. The concept of a municipality as a unified body has been expressed as follows: *Page 9 
 {¶ 26} "` * * * The legal as well as the popular idea of a town or city in this country, both by name and use, is that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants — that is, a body of people collected or gathered together in one mass, not separated into distinct masses; and having a community of interest because [they are] residents of the same place, not different places. So, as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separate [sic] or segregation.' (Internal citations omitted)." Id., at 287. The Middletown court concluded that a proposed annexation before it was unlawful because the territory to be annexed "extends outward from the city for several miles * * * [and] it violates the basic concept of municipal unity." Id., at 288.
 {¶ 27} Relators distinguish the annexation herein, since it is sought pursuant to R.C. 709.21 and 709.022, from those, as inMiddletown, brought pursuant to R.C. 709.033(A), because the latter statute requires analysis of whether or not the property to be annexed is unreasonably large, which includes consideration of "the geographic character, shape, and size of the territory to be annexed in relation to the territory to which it will be annexed, and in relation to the territory remaining after the annexation is completed." Golonka v.Bethel Twshp. Bd. Of Trustees (Dec. 8, 2000), Miami App. No. 2000-CA-33,2000 WL 1803636. R.C. 709.033(A)(5) also requires a determination that, "[o]n balance, the general good of the territory proposed to be annexed will be served, and the benefits to the territory to be annexed and the surrounding area will outweigh the detriments to the territory proposed to be annexed and the surrounding area, if the annexation petition is granted." According to Relators, "[i]n the case of an expedited annexation petition under R.C. 709.022, the determination as to whether the *Page 10 
proposed annexation satisfies the contiguity requirement is left for the affected township and municipality to decide through their CEDA."
 {¶ 28} Finally, Relators assert, "The City and Township, as authorized by R.C. 701.07(C)(8), had previously specifically agreed and determined in their CEDA that such touching makes an annexation territory `contiguous,' notwithstanding the fact that the territory includes a long narrow strip of land." Relators assert that the Board has a legal duty to act.
 {¶ 29} According to the Board, "All expedited annexation proceedings flow through R.C. 709.021. In drafting R.C. 709.021(A), the Ohio General Assembly included the condition precedent that the territory to be annexed under any expedited annexation must be contiguous to the municipal corporation involved. The General Assembly was well aware of the meaning that had been given to the term `contiguous' [inMiddletowri] and chose to use that specific word in relation to all expedited annexations."
 {¶ 30} In reliance upon Brennaman v. R.M.I. Co.(1994),70 Ohio St.3d 460, 464, 639 N.E.2d 425, 1994-Ohio-322, the Board argues, "[O]nce words have acquired a settled meaning, that same meaning will be applied to a subsequent statute on a similar or analogous subject. (Internal citation omitted). The rule is premised on the assumption that the General Assembly is aware of the meaning previously ascribed to words when enacting new legislation. (Internal citation omitted)."
 {¶ 31} The Board points out that the General Assembly drafted additional contiguity requirements into R.C. 709.023 annexations, noting that the legislature "could have done something similar for expedited type-1 annexations, but it did not. The General Assembly leaving the term `contiguous' unaltered as applied to R.C. 709.022 demonstrates that the *Page 11 
General Assembly meant the term to retain its established meaning underMiddletown v. McGee" The Board argues that the area to be annexed to the City of Springfield is not contiguous to the city but rather is separated from the city "by a string only six inches wide and over 900 feet long, * * * the very definition of a balloon on a string, which was disfavored in Middletown v. McGee."
 {¶ 32} Finally, the Board argues that Relators' argument regarding the CEDA reads the word "contiguous" out of R.C. 709.021, and the Board asserts that R.C. 701.07 does not grant the parties to the CEDA the authority to eliminate the contiguity requirement in R.C. 709.021 by contract. The Board argues that every word in a statute should be given effect, and, since the territory proposed for annexation is not contiguous to the City of Springfield, Relators' petition should be denied.
 {¶ 33} In Relators' Reply Brief, they argue, Brennaman must be read in context with the statute to which it is being applied. The distinction between R.C. 709.02, and 709.021 and 709.022 is significant in that 709.02 presents substantial risk of conflict between or among interested parties and R.C. 709.021 and 709.022 do not. "Consequently, R.C. 709.021
and 709.022 are not analogous to R.C. 709.02." II. Analysis
 {¶ 34} We begin by noting, a "basic rule of statutory construction requires that `words in statutes should not be construed to be redundant, nor should any words be ignored.' (Internal citation omitted). Statutory language `must be construed as a whole and given such interpretation as will give effect to every word and clause in it. No part should be treated as superfluous unless that is manifestly required, and the court should avoid that construction *Page 12 
which renders a provision meaningless or inoperative.'" D.A.B.E., Inc.v. Toledo-Lucas Cty. Bd. Of Health, 96 Ohio St.3d 250, 2002-Ohio-4172, ¶ 26.
 {¶ 35} In Brennaman, relied upon by the Board, a statute of repose, R.C. 2305.131, prohibited tort actions against designers and engineers of improvements to real property brought more than 10 years after completion of construction. In the context of wrongful death and personal injury suits, to avoid application of R.C. 2305.131, Appellants argued that a sodium handling system within a production plant was a fixture, and not an improvement to real property within the meaning of R.C. 2305.131, directing the Court's attention to Zangerle v. Std. Oilof Ohio (1945), 144 Ohio St. 506, 30 O.O. 151, 60 N.E.2d 52.Zangerle interpreted the phrase "land and improvements thereon," found in Section 2, Article XII of the Ohio Constitution, in the context of preferential tax treatment for certain personal property that was determined not to be an improvement to real property. Zangerle held that certain machinery and equipment was personal property, for tax purposes, and not an improvement on land. Zangerle, syllabus at ¶ 6.
 {¶ 36} The Brennaman Court noted the "general axiom of statutory construction that once words have acquired a settled meaning, that same meaning will be applied to a subsequent statute on a similar oranalogous subject," (emphasis added), but the Court determined that the axiom did not apply therein, "as the threshold requirement of similarity in purpose and subject between R.C. 2305.131 and Section 2, Article XII has not been met." Brennaman, at 464. It was significant to theBrennaman Court that the authority relied upon by appellants "dealt with personal property taxation, whereas the present action is based on a dissimilar statute of repose. * * * Without similarity of purpose or subject, the law of prior cases should not be interpolated *Page 13 
in subsequent cases. Therefore, since improvements to realty arise in two distinct contexts, the words of the statute must be read according to their common usage." Id.
 {¶ 37} R.C. 709.021 imposes a contiguity requirement by its express language, and we will not construe the statute in such a way as to render the provision meaningless or inoperative, and Brennaman requires application of the "settled meaning" of contiguous, as defined inMiddletown, to R.C. 709.021. This is because R.C. 709.021 addresses "a similar or analogous subject" to that addressed by R.C. 709.02, namely the annexation of contiguous property. In other words, R.C. 709.021 and709.02 are not dissimilar in purpose or subject, like the statutes inBrennaman, and we are compelled to interpolate the meaning of contiguous in Middletown herein.
 {¶ 38} A review of the record makes clear that the property sought to be annexed is not contiguous to the City of Springfield in a manner consistent with Middletown, but it is rather a disfavored balloon on string[1] . The proposed annexation will not produce a "unified body," but rather, "distinct masses" will result. The idea of "oneness, community, locality, vicinity, a collective body," is absent herein, while separation and segregation is inevitable. Moreover, *Page 14 
Relators' argument that the City of Springfield and Springfield Township may, by the terms of their CEDA, supercede the "contiguous to" requirement of R.C. 709.021, an argument which is necessarily premised on the view that such a power is implicit in R.C. 709.022, fails. Annexation, like zoning, is an exercise of the police power, and "whatever authority townships possess to enact local police power regulations is limited to that which is specifically conferred by statute." Yorkavitz v. Board of Trustees of Columbia Twp. (1957),166 Ohio St. 349, 351, 142 N.E.2d 655. In other words, townships possess only those police powers "expressly delegated to them by statute." Id., at 351; Board of Twp. Trustees v. Funtime, Inc. (1990),55 Ohio St.3d 106, 563 N.E.2d 717. Further, the same logically applies to the City of Springfield, which possesses police powers under "home rule," (see Section 3, article XVIII of the Ohio Constitution). The City's police power, however, is limited, and it cannot exercise a power to annex through a CEDA when R.C. 709.022 expressly confers that power on the Board.
 {¶ 39} R.C. 709.021 and 709.022 confer no right in law on petitioners to have the annexation they request when the Board finds that the territory to be annexed is not "contiguous to" the City of Springfield. That is a discretionary determination reserved by R.C. 709.021 to the Board, and it is not subject to relief in mandamus absent an abuse of discretion. State ex rel. Martin Industrial Commission (1973),34 Ohio St.2d 109. Since Middletown prohibits a "balloon on a string," we see no abuse of discretion. Accordingly, Relators' Petition for Writ of Mandamus is denied.
FAIN, J. and GRADY, J., concur.
[1] A review of the record reveals 60.914 acres of the 61.380 acres to be annexed is composed of two large adjoining parcels owned by Mishler and Overholser Builders, and this acreage is removed from the City of Springfield. Another .456 acres from the two Davis properties and .01 acres from the Durst property completes the total annexation acreage. The annexation map reveals that the Davises own two lots, numbered 64 and 65, and Durst owns one lot, numbered 66, and the three lots are situated in a linear fashion running north and south. These parcels do not adjoin the 60.914 acres but rather serve as a link between two separate six inch wide strips of right-of-way, one of which runs from the City of Springfield to the Davis property, while the other strip runs from the Durst property to the 60.914 acres, thereby linking that parcel to the City of Springfield. *Page 1