[Cite as *State ex rel. Xenia v. Greene Cty. Bd. of Commrs.*, 2019-Ohio-4801.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| THE STATE OF OHIO ex rel. CITY OF XENIA, OHIO, et al. | : | Case No. 2018CA0021 |
| | : | |
| *Petitioners-Relators* | : | |
| | : | |
| v. | : | |
| | : | [Original Action in Mandamus] |
| GREENE COUNTY BOARD OF COMMISSIONERS, et al. | : | |
| | : | |
| *Respondents* | : | |

---

**DECISION AND ENTRY**
April 16, 2019

---

PER CURIAM:

**Introduction**

**{¶ 1}** The City of Xenia, Ohio seeks to annex certain territory that is located in Xenia Township. After the Greene County Board of Commissioners denied the City's annexation petition, the City asked this court to issue a writ of mandamus compelling the Board to approve it. The Board now seeks summary judgment dismissing the mandamus action. We find that the Board is not entitled to dismissal. This matter will proceed.

{¶ 2}   The parties agree on nearly all the underlying facts.  On September 21, 2017, the City of Xenia, Ohio (the City) filed with the Greene County Board of Commissioners (the Board) a petition for annexation of 45.637 acres, more or less, in Xenia Township (the Petition).  The territory to be annexed is comprised of about 41 acres of a bike path that is owned by the City, and about 4.5 acres owned by the State of Ohio, which is located at one end of the bike path.  The City filed the Petition as the owner of the territory, and also participated in the proceedings as the municipal corporation to which annexation was proposed.

{¶ 3}   The Petition seeks what is commonly referred to as an "expedited type 2" annexation, which is a process that "allow[s] a unanimous group of defined owners to seek annexation in a streamlined fashion."  *State ex rel. Cornell v. Greene Cty. Bd. of Commrs.*, 2d Dist. Greene No. 13-CA-23, 2014-Ohio-5584, ¶ 27; R.C. 709.023.  The Xenia Township Board of Trustees (the Township) objected to annexation.   On November 2, 2017, the Greene County Board of Commissioners concluded that the Petition did not satisfy all the statutory requirements for annexation and voted to deny the Petition.  This mandamus case was filed thereafter on May 23, 2018 by the City and its agent, Donnette Fisher.

{¶ 4}   The Board initially moved to dismiss the case pursuant to Civ.R. 12(B)(6).  We converted the motion to one for summary judgment pursuant to Civ.R.12(B) and allowed the parties an opportunity to supplement their filings.  Pending before the court are the following:

1.  The Board's July 11, 2018 Motion to Dismiss; and

   - The City's July 31, 2018 Response to the July 11 Motion to Dismiss;

2.  The Board's October 5, 2018 Supplemental Motion for Summary Judgment;

   - The City's October 25, 2018 Response to the Motion for Summary Judgment;

and

- The Board's November 5, 2018 Reply to the City's Response to the Motion for Summary Judgment.

The parties have also filed a Joint Statement of Facts and have identified joint exhibits, in addition to the exhibits proffered by the City in support of its mandamus complaint. Additional facts will be discussed as relevant below.

## Legal Standards

### *Mandamus*

{¶ 5} A "writ of mandamus is an appropriate remedy should a board of county commissioners fail to perform its statutory duty in regard to a Type 2 annexation petition." *Lawrence Twp. Bd. of Trustees v. Canal Fulton*, 185 Ohio App.3d 267, 2009-Ohio-6822, 923 N.E.2d 1180, ¶ 16 (5th Dist.); *see also* R.C. 709.023(G) ("There is no appeal in law or equity from the board's entry of any resolution under this section, but any party may seek a writ of mandamus to compel the board of county commissioners to perform its duties under this section").

{¶ 6} To be entitled to an extraordinary writ of mandamus, the City must ultimately show (1) that it has a clear legal right to the relief sought, (2) that the Board has a clear legal duty to perform the requested act, and (3) that the City has no plain and adequate remedy at law. *Cornell,* 2d Dist. Greene No. 13-CA-23, 2014-Ohio-5584, at ¶ 23.

{¶ 7} The City "must establish a clear legal right to the requested relief by demonstrating that it has satisfied all of the statutory conditions for annexation." *State ex rel. National Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, 97 N.E.3d 404, ¶ 26. "If each of the conditions of R.C. 709.023(E) has been

met, the commissioners have a clear legal duty to approve the annexation." *Id.*, citing R.C. 709.023(F). "Because R.C. 709.023(G) states that there is no appeal in law or equity from any resolution of the commissioners regarding an expedited annexation but that 'any party may seek a writ of mandamus to compel the board of county commissioners to perform its duties under this section,' the third requirement for the issuance of [a mandamus] writ – that the petitioner lacks an adequate remedy in the ordinary course of law – has been satisfied." *Id.*

### *Summary Judgment*

{¶ 8}   Original actions filed in this court "ordinarily proceed as civil actions under the Ohio Rules of Civil Procedure." Loc.App.R. 8(A).   Pursuant to those rules, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).  It must appear "from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Levin v. Schremp,* 73 Ohio St.3d 733, 734, 654 N.E.2d 1258 (1995).  Here, only the Board has moved for summary judgment, so we view the evidence in a light most favorable to the City.

### **Analysis**

### *Theories of Relief in the Verified Complaint*

{¶ 9}   The complaint proposes three theories in support of its request for mandamus relief.  The third theory of relief is the one typically raised in annexation cases:  that the

Petition satisfied all the statutory conditions for annexation, and that the City is therefore entitled to a writ of mandamus compelling the Board to approve the Petition. The first and second theories of relief, however, assert that other deficiencies in the Board's process entitle the City to a writ of mandamus approving the Petition. The alleged deficiencies are that the Board improperly held a public hearing in November 2017 on the Petition, and that the Board delegated its statutory duties to others (i.e., the county prosecutor, engineer, and planning commission) when evaluating the Petition.

{¶ 10} Only the third theory is a viable theory of relief under the circumstances before us. While mandamus relief is available "to compel the board of county commissioners to perform its duties under" R.C. 709.023(G), such a writ *to approve a petition* requires proof "that [petitioner] has satisfied all of the statutory conditions for annexation." *National Lime,* 152 Ohio St.3d 393, 2017-Ohio-8348, 97 N.E.3d 404, at ¶ 26. If petitioner has, then "the commissioners have a clear legal duty to approve the annexation." *Id.,* citing R.C. 709.023(F).

{¶ 11} In contrast, the procedural deficiencies alleged by the City would not entitle the City to the automatic *approval* of its Petition. This is because of how a mandamus claim is structured. The first two elements of a mandamus claim mirror each other; the clear legal right claimed by the petitioner corresponds to the respondent's clear legal duty. *See State ex rel. Evans v. McGrath*, 153 Ohio St.3d 287, 2018-Ohio-3018, 104 N.E.3d 779, ¶ 4 (referring to "(1) a clear legal right to the requested relief, (2) a corresponding legal duty on the part of Judge McGrath to provide it"); *Cornell,* 2d Dist. Greene No. 13-CA-23, 2014-Ohio-5584, at ¶ 35 ("Because they are intertwined, we consider the first two elements of the mandamus claim together"). If both elements are proved, the appropriate relief is that the

respondent be required to satisfy the particular duty at issue. *See generally State ex rel. Benton's Village Sanitation Serv., Inc. v. Usher*, 34 Ohio St.2d 59, 295 N.E.2d 657 (1973) (where respondent's duty was to consider an application for a license, the appropriate remedy in mandamus was an order to *consider* the application, not an order to *grant* it).

{¶ 12} In this case, the rights and duties identified in the first two theories of relief correspond to each other, but do not correspond to the requested relief. That is, the claimed right to have no public hearing on the Petition (or, phrased differently, the right to have a petition considered without a public hearing) could arguably support a request for a writ of mandamus to compel the Board not to have a hearing. The claimed right to have a petition considered without input from other county officials could conceivably support a request for a writ of mandamus compelling the Board not to seek their input. R.C. 709.023(G); *but see State ex rel. Myocare Nursing Home, Inc. v. Cuyahoga Cty. Court of Common Pleas*, 145 Ohio App.3d 22, 25, 761 N.E.2d 1072 (8th Dist.2001) ("mandamus does not lie to correct errors and procedural irregularities").[1] But evidence that the Board failed to perform these claimed duties does not automatically lead to the conclusion that the Board should be compelled to perform *different* duties, i.e., to approve the Petition. We are not persuaded that the claimed process errors present viable theories of relief toward a writ of mandamus compelling the Board to approve the Petition.

{¶ 13} Although we recognize the factual and legal disagreements between the parties on these issues, we need not make any determination whether the alleged rights/duties are enforceable in mandamus, or whether the Board acted improperly. We

---

[1] We also question whether such an injunction-like request would be within our jurisdiction to grant, as described in paragraph 14 herein.

instead conclude that even if the parties agreed that procedural errors were made, the City would not consequently, automatically, be entitled to the approval of its Petition. That relief is available only where the City shows that the Petition satisfied all the statutory requirements. *National Lime,* 152 Ohio St.3d 393, 2017-Ohio-8348, 97 N.E.3d 404, at ¶ 26.

{¶ 14} Moreover, even if the City sought the relief corresponding to the claimed errors, we fail to see how we could provide that relief at this time. We cannot now order the Board to *not* have held a public hearing or public meeting in November 2017, or to *not* have delegated its review duties at that time. This court is not sitting in an appellate role, addressing procedural errors and their impact on the proceedings below. Rather, this court is evaluating whether a writ should now issue to compel certain actions that are clearly required. Logic dictates that we cannot issue a writ of mandamus to compel the Board to have not taken some action it has already taken. Such "prohibitive relief requested by relators is more suited to declaratory judgment or injunction than to mandamus, which is a command to perform an affirmative act." S*tate ex rel. Hodges v. Taft*, 64 Ohio St.3d 1, 8, 591 N.E.2d 1186 (1992). We have no original jurisdiction to hear declaratory judgment or injunction claims in this context. *See State ex rel. Federle v. Warren Cty. Bd. of Elections*, Ohio Sup. Ct. Slip Opinion No. 2019-Ohio-849, ¶ 29, citing *State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, ¶ 13.

{¶ 15} This court has the authority to sua sponte dismiss an original action claim "when * * * the claimant obviously cannot prevail on the facts alleged in the complaint." *State ex rel. Williams v. Trim*, 145 Ohio St.3d 204, 2015-Ohio-3372, 48 N.E.3d 501, ¶ 11 (internal citations and quotations omitted). While our consideration of these theories of relief is not precisely sua sponte, as the Board alluded to this disconnect in its reply memorandum in

support of summary judgment,[2] we conclude that the City obviously cannot prevail on the facts alleged in the first two theories of relief described in the complaint. We therefore dismiss them. The remainder of this decision concerns the third theory of relief and the heart of the matter before us: whether the Board is required to approve the Petition because the City satisfied all the statutory requirements.

*The Process and Statutory Requirements for Expedited Type 2 Annexation*

{¶ 16} Annexation is strictly a statutory process, and so we begin with the language of the statute. *State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Commrs.,* 112 Ohio St.3d 262, 2006-Ohio-6411, 858 N.E.2d 1193, ¶ 2. R.C. 709.023 describes the process and requirements for an expedited type 2 annexation. It is one of three procedures created by the General Assembly in 2001 to "allow for expedited annexations when all the property owners within a parcel to be annexed sign an annexation petition." *Id.* at ¶ 3. These "new" procedures "eliminate discretion by requiring the board of commissioners to approve annexation if the petition complies with certain technical requirements." *Sugarcreek Twp. v. Centerville,* 184 Ohio App.3d 480, 2009-Ohio-4794, 921 N.E.2d 655, ¶ 97 (2d Dist.). According to the Supreme Court of Ohio, some of the goals of the expedited procedures "were to promote consistency in decision-making by putting in place firm standards to govern the consideration of annexation petitions, to improve the efficiency of annexations by creating the expedited processes, and to promote cooperation among local governments." *Butler Twp.* at ¶ 8.

---

[2] The Board argued: "The disputed factual issues raised by Relator, like whether the BOCC had authority to seek review from the Engineer, Regional Planning or the Prosecuting Attorney, or whether the BOCC has a public hearing instead of a public meeting, are not relevant as to whether the BOCC has a legal duty to grant the annexation."

{¶ 17} An expedited type 2 annexation is the process that allows all of the owners of certain territory located within a township to seek annexation of their land into a municipality, while still remaining within the township. R.C. 709.023(A). The process is streamlined as compared with a traditional annexation, as the name suggests. A petition is filed and then promptly "entered upon the board's journal at its next regular session." R.C. 709.023(B). Within five days of entry on the board's journal, appropriate notice must be given to certain legislative and fiscal authorities and neighboring property owners. R.C. 709.023(B). Within twenty days of the initial filing, the municipality to which annexation is proposed must adopt and file with the board an ordinance or resolution addressing the services the municipality will provide within the annexed territory and certain other issues. R.C. 709.023(C).

{¶ 18} Within twenty-five days of the initial filing, either the municipality to which annexation is proposed or the township in which the territory is located may consent to the annexation, or they may object on the basis that the petition does not meet the specific requirements discussed below. R.C. 709.023(D)-(E). If both the municipality and the township consent, the board must automatically grant the petition at its next regular session. R.C. 709.023(D). A lack of action by the municipality or township is "deemed to constitute consent." R.C. 709.023(D).

{¶ 19} If the municipality or township objects, the board then proceeds to review the petition to determine if each of the seven conditions discussed below are met. R.C. 709.023(E). This process (where there is an objection) is intended to take "[n]ot less than thirty or more than forty-five days after the date that the petition is filed." R.C. 709.023(F).

{¶ 20} In this case, the City of Xenia seeks to annex territory that is located within Xenia Township. The City owns most of the territory and submitted the Petition as the owner.

The parties appear to agree that the State of Ohio, which owns the remaining portion of the territory to be annexed, was not required to join in the Petition by virtue of R.C. 709.02(E), which states:

> For purposes of sections 709.02 to 709.21, 709.38, and 709.39 of the Revised Code, the state or any political subdivision shall not be considered an owner and shall not be included in determining the number of owners needed to sign a petition unless an authorized agent of the state or the political subdivision signs the petition. The authorized agent for the state shall be the director of administrative services.

The record before us nonetheless contains a "Consent for Annexation" by "The State of Ohio, on behalf of Central State University ('CSU'), by and through the Department of Administrative Services," signed by Robert Blair, its Director.  *See* Exhibit BB.

{¶ 21} Xenia Township objected to annexation in a Resolution filed with the Board on October 16, 2017.  Because the Township objected, the Board reviewed the Petition for compliance with R.C. 709.023(E).  R.C. 709.023(D).  The Board also held what one commissioner referred to at the time as "a hearing."  The parties disagree about the nature of this hearing or meeting, at which the Board heard arguments from the City and the Township, as well as comments from members of the public.

{¶ 22} Division (E) lists the seven substantive requirements that must be satisfied for a board of county commissioners to approve an expedited type 2 annexation petition:

> **(1)** *The petition meets all the requirements set forth in, and was filed in the manner provided in, section 709.021 of the Revised Code.*
>
> **(2)** The persons who signed the petition are owners of the real estate located

in the territory proposed for annexation and constitute all of the owners of real estate in that territory.

**(3)** The territory proposed for annexation does not exceed five hundred acres.

**(4)** *The territory proposed for annexation shares a contiguous boundary with the municipal corporation to which annexation is proposed for a continuous length of at least five per cent of the perimeter of the territory proposed for annexation.*

**(5)** *The annexation will not create an unincorporated area of the township that is completely surrounded by the territory proposed for annexation.*

**(6)** The municipal corporation to which annexation is proposed has agreed to provide to the territory proposed for annexation the services specified in the relevant ordinance or resolution adopted under division (C) of this section.

**(7)** *If a street or highway will be divided or segmented by the boundary line between the township and the municipal corporation as to create a road maintenance problem, the municipal corporation to which annexation is proposed has agreed as a condition of the annexation to assume the maintenance of that street or highway or to otherwise correct the problem.* * * *

(Emphasis added to indicate provisions relevant to the pending motion.)  R.C. 709.023(E).

**{¶ 23}** By resolution passed November 2, 2017, the Board found that subdivisions (E)(1) (other statutory requirements satisfied); (E)(4) (at least 5 percent contiguous boundary); (E)(5) (surrounded unincorporated area); and (E)(7) (road maintenance) were not satisfied.  The Board argues in its summary judgment motion that subdivisions (E)(1),

(E)(5), and (E)(7) are not satisfied, omitting (E)(4) (at least 5 percent contiguous boundary). We address these provisions in turn below.

*R.C. 709.023(E)(1) – Other statutory requirements satisfied*

{¶ 24} R.C. 709.023(E)(1) requires the Board to find that the "petition meets all the requirements set forth in, and was filed in the manner provided in, section 709.021 of the Revised Code." R.C. 709.021 itself contains several provisions. The Board directs us first to division (A), which it argues contains an additional contiguity requirement – separate from the specific 5 percent contiguity requirement described in R.C. 709.023(E)(4). The Board also suggests that division (B) is not satisfied because the legal description of the territory to be annexed is not accurate. We address these provisions in turn.

R.C. 709.021(A) – Additional contiguity requirement

{¶ 25} This provision appears to be at the center of the parties' disagreement. Division (A) states:

> When a petition signed by all of the owners of real estate in the unincorporated territory of a township proposed for annexation requests the annexation of that territory to a municipal corporation <u>contiguous</u> to that territory under one of the special procedures provided for annexation in sections 709.022, 709.023, and 709.024 of the Revised Code, the annexation proceedings shall be conducted under those sections to the exclusion of any other provisions of this chapter unless otherwise provided in this section or the special procedure section chosen.

(Emphasis added.) R.C. 709.021(A).

**{¶ 26}** The Board argues that the legislature's use of the word "contiguous" in this division imposes a different requirement of contiguity, in addition to the specific 5 percent contiguity requirement set forth in R.C. 709.023(E)(4). In other words, the Board argues that the territory to be annexed in an expedited type 2 petition must share a contiguous boundary with the municipal corporation of at least 5 percent, which is a technical, numerical question (*see* R.C. 709.023(E)(4)), and must also fit within the broader definition of contiguous as that term has been interpreted in annexation caselaw (*see* R.C. 709.021(A)). The Board relies on two cases to make this argument: *City of Middletown v. McGee*, 39 Ohio St.3d 284, 530 N.E.2d 902 (1988) and *State ex rel. Overholser Builders, L.L.C. v. Clark Cty. Bd. of Commrs.*, 2d Dist. Montgomery No. 2007 CA 36, 2008-Ohio-6338.

**{¶ 27}** In *Middletown*, the Supreme Court of Ohio held that a trial court should have enjoined part of an annexation sought under the statutes as they existed at that time. The Court found that annexation of a narrow strip of land extending south from a municipality was unlawful, in that "it violate[d] the basic concept of municipal unity." *Id.* at 288. The court discussed the "contiguity requirement" in the statute, noting that "[w]hile it is generally agreed that some touching of the municipality and the territory to be annexed is required, the law is unsettled as to what degree of touching is needed to fulfill" that requirement. *Id.* at 287. It ultimately held that the strip of land was "not sufficiently contiguous to the city" to allow annexation under the "concept of a municipality as a unified body." *Id.* at 287-288.

**{¶ 28}** *Middletown* was decided in 1988. As discussed, the annexation statutes were "substantially altered" in 2001 to "add three special procedures for expedited annexation. These procedures eliminate discretion by requiring the board of commissioners to approve annexation if the petition complies with certain technical requirements." *Sugarcreek Twp. v.*

*Centerville*, 184 Ohio App.3d 480, 2009-Ohio-4794, 921 N.E.2d 655, ¶ 97 (2d Dist.). The 5 percent contiguity requirement is one of the technical requirements for an expedited type 2 annexation.

{¶ 29} In 2008, this court considered whether the contiguity concept discussed in *Middletown* applied to one of the three "new" expedited types of annexation. In *Overholser*, we found that *Middletown's* contiguity requirement did apply to an expedited *type 1* annexation, based largely on statutory construction axioms. We noted that the legislature had not included an explicit contiguity definition in the expedited type 1 annexation statute, in contrast to the expedited type 2 annexation statute. *Id.* at ¶ 31. In the absence of a specific technical requirement, and because the opposite would render the word "contiguous" in the statute superfluous, we applied the definition of contiguous developed in caselaw:

R.C. 709.021 imposes a contiguity requirement by its express language, and we will not construe the statute in such a way as to render the provision meaningless or inoperative, and *Brennaman* [*v. R.M.I. Co.*, 70 Ohio St.3d 460, 464, 639 N.E.2d 425 (1993)] requires application of the "settled meaning" of contiguous, as defined in *Middletown*, to R.C. 709.021. This is because R.C. 709.021 addresses "a similar or analogous subject" to that addressed by R.C. 709.02, namely the annexation of contiguous property. In other words, R.C. 709.021 and 709.02 are not dissimilar in purpose or subject, like the statutes in *Brennaman*, and we are compelled to interpolate the meaning of contiguous in *Middletown* herein.

*Overholser* at ¶ 37.

**{¶ 30}** *Overholser* was a case of first impression for this court. *Brennaman,* on which we relied, was not an annexation case. It recognized and applied the "general axiom of statutory construction that once words have acquired a settled meaning, that same meaning will be applied to a subsequent statute on a similar or analogous subject." *Id.* at 428-429, citing R.C. 1.42 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly").

**{¶ 31}** In response to the Board's argument here, the City points this court to *Lawrence Twp. Bd. of Trustees v. Canal Fulton*, 185 Ohio App.3d 267, 2009-Ohio-6822, 923 N.E.2d 1180 (5th Dist.), in which another court of appeals rejected the argument the Board makes here. The Fifth District applied only the 5 percent contiguity requirement listed in the expedited type 2 annexation statute:

> There is no dispute that "annexation is proposed for a continuous length of at least five percent of the perimeter of the territory proposed for annexation" as required by R.C. 709.023(E)(4). However, appellant now contends that the annexation is not "contiguous to a municipal corporation" as required by R.C. 709.02(A), which states as follows: "The owners of real estate contiguous to a municipal corporation may petition for annexation to a municipal corporation in the manner provided by sections 709.02 to 709.11 of the Revised Code." According to appellant, "the parcel of property owned by appellee Johnson (which is approximately 2.6 acres and less than 200 feet in width, for the most part) was used as a 'connecting strip' for the purpose of including the

Northwest School property as part of this annexation procedure" and "[t]his form of annexation has long been disapproved, since it does not satisfy the requirement that property proposed for annexation be comprised of property which would become a unified or cohesive part of the city to which annexation is proposed."

However, R.C. 709.21(A) states as follows: "When a petition signed by all of the owners of real estate in the unincorporated territory of a township proposed for annexation requests the annexation of that territory to a municipal corporation contiguous to that territory under one of the special procedures provided for annexation in sections 709.022, 709.023, and 709.024 of the Revised Code, the annexation proceedings *shall be conducted under those sections to the exclusion of any other provisions of this chapter unless otherwise provided in this section or the special procedure section chosen.*" (Emphasis added).

Based on the above language, we find that the annexation proceedings in this case were required to be conducted under R.C. 709.023 to the exclusion of 709.02(A). Appellant does not dispute that the "annexation is proposed for a continuous length of at least five percent of the perimeter of the territory proposed for annexation" as required by R.C. 709.023(E)(4). We further note that the cases cited by appellant do not address the expedited annexation procedure under R.C. 709.023.

*Canal Fulton* at ¶ 38-40. One of the cases relied on by appellant in that case was *Middletown. See* Appellant's Brief in *Canal Fulton*, filed March 23, 2009.

{¶ 32} The City here similarly asserts that the Petition is governed by the 5 percent contiguity requirement of R.C. 709.023 (the type 2 statute) to the exclusion of the older caselaw concept of contiguity. The Board counters that R.C. 709.023 (the type 2 statute) "otherwise provide[s]" in subdivision (E)(1) that R.C. 709.021 applies, and, because R.C. 709.21(A) uses the word "contiguous," the contiguity standard developed in caselaw also applies. The Board then argues that the territory to be annexed fails this second test of contiguity.

{¶ 33} We hold that if the territory described in an expedited type 2 annexation petition satisfies the 5 percent contiguity requirement set forth in R.C. 709.023(E)(4), that is, if it "shares a contiguous boundary with the municipal corporation to which annexation is proposed for a continuous length of at least five per cent of the perimeter of the territory," then the territory is sufficiently "contiguous" to a municipal corporation as described in R.C. 709.021(A). This conclusion comports with the purpose and streamlined nature of the expedited type proceedings, as well as the limited discretion by the Board to determine if the "technical requirements" of an expedited annexation are met. *Sugarcreek Twp.,* 184 Ohio App.3d 480, 2009-Ohio-4794, 921 N.E.2d 655, at ¶ 97. It is also consistent with the most on-point caselaw and a recent Ohio Supreme Court case.

{¶ 34} As discussed above, the expedited type 2 annexation process is intended to take, at the longest, "[n]ot less than thirty or more than forty-five days after the date that the petition is filed." R.C. 709.023(F). With consent, or inaction, a petition must be approved in even shorter order. R.C. 709.023(D). The statute does not require or include a provision for a hearing or exhibits, and limits any objections to the seven requirements listed in R.C. 709.023(E). The procedure is substantively different than the procedure considered in

*Middletown*, in that it has "eliminate[d] discretion by requiring the board of commissioners to approve annexation if the petition complies with certain technical requirements." *Sugarcreek Twp.* at ¶ 97. This streamlined, expedited process in which the Board essentially checks the boxes (or not) on seven technical requirements, and only if there is an objection asking it to do so, does not lend itself to the sort of discretionary fact-finding that the Board suggests must occur.

{¶ 35} This may be the reason that R.C. 709.021(A) directs parties to the expedited type annexation statutes to the exclusion of the other annexation statutes:

When a petition signed by all of the owners of real estate * * * requests the annexation of that territory to a municipal corporation contiguous to that territory under one of the special procedures provided for annexation in sections 709.022, 709.023, and 709.024 of the Revised Code, the annexation proceedings shall be conducted under those sections to the exclusion of any other provisions of this chapter unless otherwise provided in this section or the special procedure section chosen.

R.C. 709.021(A). The Fifth District Court of Appeals held that the specific 5 percent contiguity requirement described in the expedited type 2 annexation statute was the applicable standard, a holding with which we agree. *Canal Fulton* at ¶ 39-40.

{¶ 36} We held in *Overholser* that the territory must be contiguous to the municipal corporation, a holding with which we also agree. However, because the expedited type 1 annexation statute did not supply a standard for "what degree of touching is needed" (to use *Middletown's* words) to be considered contiguous to the municipal corporation, we applied *Middletown's* definition in *Overholser*. Here, the expedited type 2 annexation statute does

supply a standard for contiguity to a municipal corporation, and that standard should be applied.

{¶ 37} This case is more like *Canal Fulton* than *Overholser*, in that *Canal Fulton* addressed an expedited type 2 annexation, the same type at issue here. Yet *Canal Fulton* is also distinguishable in that it rejected application of a different statutory provision (R.C. 709.02(A)) that does not apply to expedited type 2 annexation proceedings as discussed above. R.C. 709.021(A). Here, the Board points not to the word "contiguous" in R.C. 709.02(A), which does not apply, but to the word "contiguous" in R.C. 709.021(A), which does. *Id.* Rather than rejecting application of an inapplicable statute like the Fifth District did, we instead read the requirement in R.C. 709.021(A) together with, and consistent with, the 5 percent contiguity requirement in R.C. 709.023(E)(4).

{¶ 38} This conclusion is not inconsistent with *Overholser*. We did not hold in *Overholser* that there are two different requirements for contiguity – one statutory and one developed in caselaw – and that both must be satisfied. Rather, in a situation where there was no specific contiguity requirement in the statute, we held that the general standard for contiguity developed in caselaw applied. Here, a specific standard for contiguity is included in the expedited type 2 annexation statute, thus changing the statutory construction landscape that guided our resolution in *Overholser*.

{¶ 39} Under these circumstances, where the statutes explicitly reference each other, we conclude that R.C. 709.023(E)(4) and R.C. 709.021(A) should be read in pari materia. Thus, if the specific, technical standard for contiguity is met for an expedited type 2 annexation, the territory is sufficiently contiguous to the municipal corporation as described in R.C. 709.021(A). Boards of county commissioners, in discharging their duties to promptly

consider objections to expedited type 2 annexation petitions, need not resort to the standard for contiguity that was developed because "the law [was] unsettled as to what degree of touching [was] needed" for annexation. *Middletown* at 287. The law is not unsettled for expedited type 2 annexations; 5 percent contiguity is all the statute requires.

**{¶ 40}** This conclusion is also consistent with a recent decision of the Supreme Court of Ohio. The Court recently reviewed an expedited type 2 annexation and granted a writ of mandamus to approve it. In *State ex rel. National Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, 97 N.E.3d 404, the dispute before the Court dealt mainly with whether one entity was an "owner" as defined in the statute who needed to sign the petition. The Court, concluding that the entity's signature was not required, continued on to evaluate the other requirements for an expedited type 2 annexation petition, noting that:

> [T]his court possesses discretionary, plenary authority to fully address the merits of an extraordinary action as if it were originally filed in this court, without the necessity of remand, and the record in this case is sufficient for us to decide the merits of National Lime's petition. * * *
>
> National Lime's petition satisfies the requirements as to form, content, and filing set forth in R.C. 709.021 and 709.02(C), (D), and (E). R.C. 709.023(E)(1). The petition was signed by all of the owners of real estate in the territory; we have already determined that Norfolk is not an owner as the term is defined by R.C. 709.023(E)(2). The plat and legal description of the territory also demonstrates that the parcel to be annexed consists of 224.257 acres – well below the 500-acre limit specified in R.C. 709.023(E)(3).

Under R.C. 709.023(E)(4), the territory proposed for annexation must share a continuous contiguous boundary of at least 5 percent of its perimeter with the municipal corporation. In the proceedings below, the commissioners found that Norfolk's parcel of land divides National Lime's real property such that the bulk of the parcel it sought to annex has no contiguous boundary with the city's corporation limits. National Lime contends that because Norfolk is not an owner whose consent is required for purposes of this statutory annexation proceeding, its right-of-way cannot be deemed to sever into two parcels the territory proposed for annexation. And it argues that the territory it seeks to annex, which includes the railroad property, shares a continuous contiguous boundary of 12.5 percent of its perimeter with the city of Marion – well above the 5 percent required by the statute.

To demonstrate that the territory proposed for annexation shares a sufficiently contiguous boundary with the city, National Lime has submitted a survey plat. The plat shows that the territory proposed for annexation is roughly the shape of a trapezoid with a perimeter of 13,781.07 feet, that the railroad track passes diagonally through the southeast corner of the territory, and that the border of the territory proposed for annexation – extending roughly from the southeastern corner of the railroad's property to the southeasternmost point of the territory proposed for annexation – shares a continuous contiguous border of approximately 1,330 feet with the city of Marion. Therefore, we find that the territory proposed for annexation shares a continuous contiguous boundary of at least 5 percent of the territory's

perimeter in accordance with R.C. 709.023(E)(4). *National Lime* at ¶ 27-30.

{¶ 41} Notably, the Court did not ask or analyze whether the territory was otherwise contiguous to the municipality under *Middletown*. It did not analyze whether a separate contiguity requirement existed or was satisfied. The Court nonetheless said: "[o]n these facts, we find that National Lime has satisfied all the conditions for annexation identified in R.C. 709.023(E)(1) through (7)" and granted an extraordinary writ of mandamus. *Id.* at ¶ 32-33.

{¶ 42} While *National Lime* does not directly address the question presented here, it is instructive as to whether an additional standard must be satisfied. We therefore follow the Ohio Supreme Court's lead and approach the technical requirements of R.C. 709.023(E) in the same straightforward fashion described in the statute and in *National Lime*. We hold that if the territory described in an expedited type 2 annexation petition satisfies the 5 percent contiguity requirement set forth in R.C. 709.023(E)(4), that is, if it "shares a contiguous boundary with the municipal corporation to which annexation is proposed for a continuous length of at least five per cent of the perimeter of the territory," then the territory is sufficiently "contiguous" to a municipal corporation as described in R.C. 709.021(A).

{¶ 43} The Board here does not move for summary judgment on the basis that the territory to be annexed is less than 5 percent contiguous to the City of Xenia, but instead asserts that the petition does not satisfy the additional contiguity requirement of *Middletown*. As we have declined to impose this additional requirement, we conclude that the Board is not entitled to summary judgment on the basis that the territory is not sufficiently contiguous to the City of Xenia under R.C. 709.023(E)(1) and R.C. 709.021(A).

## R.C. 709.21(B) – Accurate legal description

{¶ 44} As part of our analysis of R.C. 709.023(E)(1), the Board points this court to division (B) of R.C. 709.21, which incorporates additional statutory requirements:

Application for annexation shall be made by a petition filed with the clerk of the board of county commissioners of the county in which the territory is located, and the procedures contained in divisions (C), (D), and (E) of section 709.02 of the Revised Code shall be followed, except that all owners, not just a majority of owners, shall sign the petition. To be valid, each petition circulated for the special procedure in section 709.022 or 709.023 of the Revised Code shall contain the notice provided for in division (B) of section 709.022 or division (A) of section 709.023 of the Revised Code, whichever is applicable.

R.C. 709.021(B). The Board suggests that R.C. 709.02(C)(2) is not satisfied. That provision requires a petition to contain "[a]n accurate legal description of the perimeter and an accurate map or plat of the territory proposed for annexation." R.C. 709.02(C)(2). The Board argues that "[t]here is evidence in the record to support the Board's decision that the map and the petition do not match, and therefore are not accurate, as set forth more fully below."

{¶ 45} The Board does not explain or point to any specific evidence of inaccuracy in its motion. It appears to pick up the thread of this argument in a later section, arguing that "the Board's conclusion that the petition and map are not accurate, and that Relator did not comply with R.C. 709.023(E)(5) is a valid and legal determination." Subdivision (E)(5), which is addressed substantively below, requires that the "annexation will not create an unincorporated area of the township that is completely surrounded by the territory proposed

for annexation." It is not clear how these two requirements concerning accuracy and surrounded unincorporated areas are related.

{¶ 46} In response to the Board's argument, the City asserts that R.C. 709.02(C)(2) is satisfied, and points to evidence in the record:

> An accurate legal description and map/plat, prepared and certified by a licensed, professional surveyor was filed with the Petition and both were approved by the Greene County Engineer's Office as "legally accurate" prior to the Petition being filed with the Board.

The City cites a memorandum from Peggy Middleton on the Greene County Engineer's letterhead, stating that the "Legal Description (Exhibit A) is legally sufficient with corrections noted & Plat of Annexation Map (Exhibit B) is legally sufficient as described." Petitioner's Exhibit D.

{¶ 47} On these facts, we conclude the Board is not entitled to summary judgment on the basis that the legal description and plat map are inaccurate.

### *R.C. 709.023(E)(5) – Surrounded unincorporated area*

{¶ 48} The Board next argues that the Petition does not satisfy R.C. 709.023(E)(5), which requires that the "annexation will not create an unincorporated area of the township that is completely surrounded by the territory proposed for annexation." The Board asserts that "[w]hile there is no authority specifically interpreting [this requirement] and what 'completely surrounded by the territory for annexation' means, this provision is generally interpreted to mean that the annexation cannot create isolated areas of the township." The Board cites no authority for the "general interpretation" it suggests.

**{¶ 49}** The City responds that the statute is unambiguous and needs no interpretation.  It argues that the annexation does not create any areas "completely surrounded by the territory proposed for annexation."  Indeed, as the map of the territory to be annexed shows, the territory, mostly comprised of a bike path, does not surround anything.  Exhibit A.

**{¶ 50}** The Board urges us to construe this requirement to mean that no "islands" of unincorporated territory will result from annexation.  While this is perhaps a wise policy suggestion, it is not what the statute says.  The legislature could change the language of R.C. 709.023(E)(5), but this court cannot.  We conclude that the Board's argument is not well-taken and that the Board is not entitled to summary judgment on this basis.

### R.C. 709.023(E)(7) – Road maintenance

**{¶ 51}** The final requirement at issue concerns solving road maintenance problems:

> If a street or highway will be divided or segmented by the boundary line between the township and the municipal corporation as to create a road maintenance problem, the municipal corporation to which annexation is proposed has agreed as a condition of the annexation to assume the maintenance of that street or highway or to otherwise correct the problem.

R.C. 709.023(E)(7).  The Board asserts, and the City does not dispute, that four streets will be divided or segmented by the territory to be annexed.  The City also does not dispute that road maintenance problems will be created on three of them.  The City instead argues that it has agreed to assume maintenance for those streets or correct the problem as required.  It points to the second paragraph of the Petition, which states that:

> * * * the City of Xenia, as a condition of annexation, agrees that if any street or

highway is divided or segmented by the boundary line between the township and the City as to create a road maintenance problem it will assume the maintenance of that street or highway or * * * otherwise correct the problem.

The Petition is signed by Brent Merriman, City Manager, and Donnette Fisher, Agent, on behalf of the City of Xenia, Ohio.

{¶ 52} The City also points to a Resolution passed by the City of Xenia on September 29, 2017, which states in part:

Upon the effective date of annexation of the Territory, the City of Xenia shall provide police, fire, emergency medical services, as well as all other public services provided to all other lands within the corporate limits of the City of Xenia * * * including * * * road maintenance * * *.

The resolution was signed by Michael D. Engle, President of the Xenia City Council.

{¶ 53} The City asserts that the Petition and this resolution satisfy the road maintenance requirement. R.C. 709.023(E)(7). The Board argues that they do not, citing discussion with the City's agent at the public meeting or hearing on the Petition. The Board posits that the City must have agreed to maintain the *entire* street, wherever located, not just the portion of the street within the annexed territory. The Board also argues that the City failed to present any formal road maintenance agreements to the Board.

{¶ 54} We first observe that the statute does not require a formal road maintenance agreement to be presented with an expedited type 2 annexation petition. Nor does the statute require a "meeting of the minds" between the City and the Board (or anyone else) about the scope and terms of such an agreement as the Board suggests. Subdivision (E)(7) simply requires the Board to determine if the City has or has not "agreed as a condition of

the annexation to assume the maintenance of that street or highway or to otherwise correct the problem." Allowing the Board to acknowledge the City's express agreement but then disapprove or effectively veto it is contrary to the purpose and language of the expedited statute, and outside the Board's limited role in analyzing an expedited type 2 annexation petition. We will not read these extra requirements into the statute, and consequently do not find that the Petition was insufficient because they are not satisfied.

{¶ 55} We also observe that the statutory requirement is phrased in the disjunctive: either the City must agree to "assume the maintenance of that street or highway **or** to otherwise correct the problem." (Emphasis added.) R.C. 709.023(E)(7). Thus, despite the disagreement between the parties about the first part of this requirement – how much of the street or highway maintenance must be assumed – if the City has agreed to otherwise correct the road maintenance problem(s) created by annexation, subdivision (E)(7) will be satisfied. On the evidence currently before the court, we cannot say that the Board is entitled to judgment as a matter of law because the City did not agree to "assume the maintenance of that street or highway or to otherwise correct the problem."

{¶ 56} We find it unnecessary to reach the question of whether a municipal corporation must agree to assume maintenance of any divided or segmented streets from beginning to end, in whatever county or state they are located, or just agree to maintain the divided streets within the territory to be annexed. We also need not decide whether a board of county commissioners is permitted to conduct a public hearing/meeting on an expedited type 2 annexation petition, or whether a board's review is limited to the petition itself and accompanying documents.

**{¶ 57}** In the context of the summary judgment motion before us, we conclude that the Board is not entitled to judgment as a matter of law on this basis.

## Conclusion

**{¶ 58}** The Board's converted summary judgment motion is OVERRULED. The Board has not shown that it is entitled to judgment as a matter of law because any one of the seven statutory requirements are not met. This matter shall proceed. A separate scheduling order will be issued.

SO ORDERED.

_____
JEFFREY M. WELBAUM, Presiding Judge


_____
MARY E. DONOVAN, Judge


_____
JEFFREY E. FROELICH, Judge

Copies to:

Donnette Fisher
101 N. Detroit Street
Xenia, Ohio  45385
Petitioner /
Attorney for Petitioner, City of Xenia, Ohio

Elizabeth Ellis
55 Greene Street
Xenia, Ohio  45385
Attorney for Respondents, Greene County Board of Commissioners, Alan Anderson, Robert Glaser, Jr., and Tom Koogler

CA3/KY